ROB BONTA
Attorney General of California
DANIEL A. OLIVAS (SBN 130405)
Senior Assistant Attorney General
DENNIS L. BECK, JR. (SBN 179492)
Acting Senior Assistant Attorney General
DEBORAH M. SMITH (SBN 208960)
VANESSA MORRISON (SBN 254002)
Supervising Deputy Attorneys General
HALLIE E. KUTAK (SBN 322407)
GABRIEL MARTINEZ (SBN 275142)
ELIZABETH B. RUMSEY (SBN 257908)
Deputy Attorneys General
 1515 Clay Street, 20th Floor, P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 879-1300
 E-mail: Deborah.Smith@doj.ca.gov
      Vanessa.Morrison@doj.ca.gov
      Hallie.Kutak@doj.ca.gov
*Attorneys for Plaintiff The People of the State of California ex rel. Rob Bonta Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL. ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>EXXON MOBIL CORPORATION; AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>Defendants. | 3:24-cv-07594- RGS<br><br>**THE PEOPLE OF THE STATE OF CALIFORNIA'S REPLY IN SUPPORT OF ITS MOTION TO REMAND**<br>[Remand to the Superior Court of the State of California, County of San Francisco, Case No. CGC-24-61823]<br><br>Date:        February 13, 2025<br>Time:        1:30 p.m.<br>Dept:        Courtroom 3, 17th Floor<br>Judge:       The Honorable Richard G. Seeborg |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 2

    I.    The Complaint Raises Only State Law Claims That Do Not Implicate Federal Maritime Jurisdiction ................................................................... 2

        A.    The Claims at Issue Are Unrelated to Traditional Maritime Activity ........ 2

        B.    Neither the Location nor Disruption to Maritime Commerce Elements Are Met ................................................................................. 4

        C.    Maritime Jurisdiction Cannot Apply Here Unless ExxonMobil First Establishes an Independent Jurisdictional Basis ........................................ 6

    II.    There Is No Federal Enclave Jurisdiction Over Plaintiff's Claims ........................ 6

    III.    ExxonMobil's Historical Ties to Federal Officers Cannot Support Removal Because They Are Unrelated to the Conduct Challenged Here ............................. 9

        A.    ExxonMobil Has the Burden to Show Federal Officer Jurisdiction Exists ............................................................................................. 9

        B.    ExxonMobil Fails the Nexus Requirement ................................................. 10

        C.    ExxonMobil Has Not Shown it "Acted Under" a Federal Officer ........... 12

        D.    ExxonMobil Fails to Present a Colorable Federal Defense ..................... 14

Conclusion .................................................................................................................. 15

THE PEOPLE OF THE STATE OF CALIFORNIA'S REPLY IN SUPPORT OF ITS MOTION TO REMAND
(3:24-cv-07594-RGS)

# TABLE OF AUTHORITIES

**Page**

CASES

*Baker v. Atl. Richfield Co.*
   962 F.3d 937 (7th Cir. 2020).................................................................................................. 13

*Ballard v. Ameron Int'l Corp.*
   No. 16-CV-06074-JSC, 2016 WL 6216194 (N.D. Cal. Oct. 25, 2016).................................. 7

*Bell v. Arvin Meritor, Inc.*
   No. 12-00131-SC, 2012 WL 1110001 (N.D. Cal. 2012) ..................................................... 7, 8

*Beneficial Nat. Bank v. Anderson*
   539 U.S. 1 (2003) ................................................................................................................... 1

*Boyle v. United Techs. Corp.*
   487 U.S. 500 (1988) ............................................................................................................. 15

*California v. ARC Am. Corp.*
   490 U.S. 93 (1989) ................................................................................................................. 1

*Caterpillar Inc. v. Williams*
   482 U.S. 386 (1987) ............................................................................................................... 2

*Cf. Camacho v. Autoridad de Telefonos de Puerto Rico*
   868 F.2d 482, 486 (1st Cir. 1989) ......................................................................................... 12

*City & Cnty. of Honolulu v. Sunoco LP*
   39 F.4th 1101 (9th Cir. 2022)..................................................................................... 8, 13, 14

*City of Hoboken v. Chevron Corp.*
   45 F.4th 699 (3d Cir. 2022) .................................................................................................. 12

*City of Hoboken v. Exxon Mobil Corp.*
   558 F. Supp. 3d 191 (D.N.J. 2021) ....................................................................................... 12

*Cnty. of San Mateo v. Chevron Corp.*
   32 F.4th 733 (9th Cir. 2022)........................................................................................*passim*

*Connecticut v. Exxon Mobil Corp.*
   No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) ............................... 8

*Durham v. Lockheed Martin Corp.*
   445 F.3d 1247 (9th Cir. 2006)............................................................................................ 7, 8

*Earth Island Inst. v. Crystal Geyser Water Co.*
   521 F. Supp. 3d 863 (N.D. Cal. 2021) .............................................................................. 5, 8

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Espinoza v. Princess Cruise Lines, Ltd.*
581 F. Supp. 3d 1201 (C.D. Cal. 2022)..................................................................... 5

*Executive Jet Aviation, Inc. v. Cleveland*
409 U.S. 249 (1972) ................................................................................................ 2, 4

*ExxonMobil Corp. v. Allapattah Servs., Inc.*
545 U.S. 546 (2005) .............................................................................................. 6, 14

*Fisher v. Asbestos Corp.*
No. 2:14–cv–02338, 2014 WL 3752020 (C.D. Cal. July 30, 2014) ........................ 7

*Getz v. Boeing Co.*
654 F.3d 852 (9th Cir. 2011).................................................................................... 15

*Ghotra by Ghotra v. Bandila Shipping, Inc.*
113 F.3d 1050 (9th Cir. 1997)................................................................................... 6

*Goncalves v. Rady Children's Hosp. San Diego*
865 F.3d 1237 (9th Cir. 2017).................................................................................. 10

*Hukkanen v. Air and Liquid Systems Corp.*
No. CV 17-2227-JFW, 2017 WL 1217075 (C.D. Cal. March 31, 2017)................... 7

*In re High-Tech Empl. Antitrust Litig.*
856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................................................... 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*
488 F.3d 112 (2d Cir. 2007)................................................................................ 11, 12

*In re Mission Bay Jet Sports, LLC*
570 F.3d 1124 (9th Cir. 2009)................................................................................... 4

*In re Wireless Tel.*
327 F. Supp. 2d 554 (D. Md. 2004) ........................................................................ 11

*Isaacson v. Dow Chemical Co.*
517 F.3d 129 (2nd Cir.1982)............................................................................... 12, 13

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*
513 U.S. 527 (1995)......................................................................................... 2, 3, 4

*Kohlasch v. New York State Thruway Auth.*
460 F.Supp. 956 (S.D.N.Y. 1978).......................................................................... 3

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Lake v. Ohana Mil. Cmtys., LLC*
14 F.4th 993 (9th Cir. 2021)...................................................................................... 6

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014)............................................................................... 9, 11

*Leite v. Crane Co.*
868 F. Supp. 2d 1023 (D. Haw. 2012) ...................................................................... 14

*Merrell Dow Pharm. Inc. v. Thompson*
478 U.S. 804 (1986)................................................................................................... 1

*Owens–Illinois, Inc. v. U.S. Dist. Ct. for W. D. of Washington*
698 F.2d 967 (9th Cir. 1983)..................................................................................... 5

*Ryan v. Dow Chem. Co.*
781 F. Supp. 934 (E.D.N.Y. 1992) .......................................................................... 10

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004)................................................................................... 9

*Shapiro v. Lundahl*
No. 16-CV-06444, 2017 WL 2902799 (N.D. Cal. July 7, 2017)............................. 10

*Singer v. State Farm Mut. Auto. Ins. Co.*
116 F.3d 373 (9th Cir. 1997)..................................................................................... 9

*Sisson v. Ruby*
497 U.S. 358 (1990)................................................................................................ 2, 4

*State by Tong v. ExxonMobil Corp.*
83 F.4th 122 (2d Cir. 2023)....................................................................................... 7

*Taghadomi v. United States*
401 F.3d 1080 (9th Cir. 2005)................................................................................... 5

*Tobar v. United States*
639 F.3d 1191 (9th Cir. 2011)................................................................................... 5

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*
550 U.S. 330 (2007).................................................................................................. 1

*United States v. City of Redwood City*
640 F.2d 963 (9th Cir. 1981)..................................................................................... 4

THE PEOPLE OF THE STATE OF CALIFORNIA'S REPLY IN SUPPORT OF ITS MOTION TO REMAND
(3:24-cv-07594-RGS)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Valdez v. Allstate Ins. Co.*
   372 F.3d 1115 (9th Cir. 2004) ....................................................................................... 10

*Williams Sports Rentals, Inc. v. Willis*
   90 F.4th 1032 (9th Cir. 2024) ......................................................................................... 6

**STATUTES**

28 U.S.C.A. § 1333(1) ........................................................................................................ 6

46 U.S.C.A. § 30101 .......................................................................................................... 3

28 U.S.C. § 1333 ............................................................................................................... 2

**OTHER AUTHORITIES**

15 C.F.R. § 922.23 ............................................................................................................. 6

THE PEOPLE OF THE STATE OF CALIFORNIA'S REPLY IN SUPPORT OF ITS MOTION TO REMAND
(3:24-cv-07594-RGS)

# INTRODUCTION

California is "vested with the responsibility of protecting the health, safety, and welfare of its citizens." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007). This responsibility includes bringing state law actions—in state court—to protect consumers and the environment from the type of deceptive conduct perpetrated by Defendant ExxonMobil Corporation ("ExxonMobil") here because "'prevent[ing] the deception of consumers'" is "an area traditionally regulated by the States." *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989).

Plaintiff the People of the State of California (the "People") allege state law violations that have caused harms to California's consumers and natural resources. ECF No. 1, Notice of Removal, Declaration of Dawn Sestito, Ex. 1 thereto, Complaint (hereinafter, "Compl."). [1] It is well established that federal jurisdiction rests on the claims actually asserted by the plaintiff. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.").

ExxonMobil desperately attempts to reframe this consumer deception action into something else, grasping at several straws. First, ExxonMobil claims this action involves torts on navigable seas involving commercial fishing. Or injuries in federal enclaves—despite the Complaint's clear and unambiguous disavowal of any injuries or relief attributable to any federal lands. Finally, ExxonMobil attempts to equate the production of synthetic rubber during World War II to the deceptive marketing of single-use plastics during the time covered by the Complaint. ExxonMobil's retelling of the Complaint bears little resemblance to the one that is on file and before this Court. Permitting ExxonMobil to manufacture federal jurisdiction here would

---

[1] Each cause of action is rooted in ExxonMobil's deceptive conduct toward consumers. *See* Compl. ¶ 427 (nuisance caused by ExxonMobil's "deceptively promoting recycling"); *id.* ¶ 443 (destruction of natural resources caused by ExxonMobil's "marketing . . . plastic production . . . as sustainable through the use of recycling and 'advanced recycling'"); *id.* ¶ 452 (ExxonMobil "through their deception, permitted to pass into the waters of the State plastic waste"); *id.* ¶¶ 455-462 (misleading advertising, misleading environmental marketing, and unfair competition claims cataloguing ExxonMobil's many deceptions regarding recycling).

eviscerate the principle that a plaintiff is "master of the claim," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and expand removal jurisdiction well beyond what the Supreme Court and Ninth Circuit have ever allowed. This Court should follow the Ninth Circuit's consistent rejection of ExxonMobil's claims of federal jurisdiction in similar cases and remand this case to its proper forum: the Superior Court of California for the County of San Francisco.[2]

## ARGUMENT

**I.    THE COMPLAINT RAISES ONLY STATE LAW CLAIMS THAT DO NOT IMPLICATE FEDERAL MARITIME JURISDICTION**

ExxonMobil's contention that this Court has original maritime jurisdiction under 28 U.S.C. § 1333 is wrong. ExxonMobil's campaign to deceive consumers regarding the recyclability of its plastic polymers—and the resulting environmental nuisance and pollution—have no nexus whatsoever to traditional maritime activities. This does not change simply because plastic waste ends up in coastal waters and impairs ecosystems and economies. While the lack of a relationship between ExxonMobil's misconduct and traditional maritime activities alone is sufficient to defeat jurisdiction, none of the other elements of the test for maritime jurisdiction are satisfied either, and such jurisdiction does not lie.

**A.    The Claims at Issue Are Unrelated to Traditional Maritime Activity**

For maritime jurisdiction to lie, the "activity giving rise to the incident" must bear a "substantial relationship" to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 358 (1990); *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 261 (1972). That nexus is entirely lacking here, regardless of whether the claims' "general features" or "minute particulars" are considered. Opp. at 11. In other words, there is no nexus between ExxonMobil's deception (i.e., the "activity giving rise" to the pollution at issue) and a traditional maritime activity.

In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* the Supreme Court explained that the traditional test for maritime jurisdiction was understood to require that the tort

---

[2] The Opposition devotes significant space to assailing various California agencies for promoting plastic recycling—arguments that are both irrelevant to remand and factually flawed. Opp. at 1-6. While the People dispute ExxonMobil's misleading assertions, they are matters for the state court to resolve on the merits and, as ExxonMobil acknowledges, irrelevant to this motion, which solely concerns the question of "who decides" this case. Opp. at 2:17-18. Because there is no federal jurisdiction here, the answer is unequivocally the Superior Court of California.

2

occur "wholly" in navigable waters. 513 U.S. 527, 532 (1995). Such torts naturally had a relationship to "traditional maritime activities," because—occurring as they did on the high seas—they almost always occurred while the tortfeasor was *engaged* in traditional maritime activities. *Id.* The *Great Lakes* Court then went on to explain that, to avoid scenarios where maritime jurisdiction would otherwise apply but was defeated simply because a tort also had a connection to land (as where a boat crashes into a pier), Congress expanded the scope of maritime jurisdiction with the Admiralty Extension Act, 46 U.S.C.A. § 30101 ("AEA"). *Id.* However, it is clear from the plain language of that statute that a relationship to traditional maritime activities is still required, since a *vessel* must be involved for the AEA to apply.[3] No court has held otherwise.

Neither the traditional maritime activity test nor the expanded test is met here: It is beyond reasonable dispute that none of the alleged torts occurred "wholly" at sea because the Complaint does not allege that ExxonMobil dumped plastic waste into navigable waters where the plastic pollution is found. Nor is a vessel implicated in any claim. Thus, as *Great Lakes* makes clear, this case is far afield from the cases Congress intended to bring within scope of maritime jurisdiction.

ExxonMobil endeavors to manufacture a nexus to traditional maritime activities by focusing on the People's water pollution cause of action. Opp. at 12. The cases cited by ExxonMobil are wholly inapposite, and none supports its position that the pollution alleged here is a "maritime tort." In *Kohlasch v. New York State Thruway Auth.*, for one, the court considered whether maritime jurisdiction applied to pollution discharged from a drain into a riparian waterway that, at high tide, could be navigated by boat. 460 F.Supp. 956, 962 (S.D.N.Y. 1978). The court concluded that it did, because the discharge completely obstructed the channel, making it "unfit for navigation." *Id*. But the court nowhere characterized the *discharge* as a "maritime activity" or "maritime tort," as ExxonMobil suggests. The relevant "maritime activity" or "interest" was navigation by boat, and maritime jurisdiction was invoked because *that* activity was impacted. The court nowhere suggests that the discharge alone would have been sufficient.

---

[3] The statute provides, "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land."

ExxonMobil also leans on *United States v. City of Redwood City*, 640 F.2d 963, 969 (9th Cir. 1981) for the proposition that "'[o]il pollution in navigable waters constitutes a 'maritime tort.' [sic]" Opp. at 12. Overlooking for the moment that ExxonMobil misquotes *Redwood City*[4] and that California has not alleged oil pollution here, neither *Redwood City* nor any case it cites supports the contention that the pollution alleged in the Complaint is subject to maritime jurisdiction simply because it touches navigable waters. And none could. The Supreme Court has made clear that it is not enough that the "wrong" occurs or is located in navigable waters; it must also be true that the "activity giving rise to the incident" bears a "significant relationship" to traditional maritime activity. *Executive Jet Aviation,* 409 U.S. at 261; *Sisson*, 497 U.S. at 358. Here, even if the "incident" is the pollution of navigable waters, the "activity giving rise to the incident" is ExxonMobil's deception regarding the viability of plastic recycling, and there is no conceivable (let alone substantial) relationship between that and traditional maritime activities.

**B.    Neither the Location nor Disruption to Maritime Commerce Elements Are Met**

ExxonMobil also fails to establish that other elements of the maritime jurisdiction test are met, including (1) the "location" test and (2) the requirement that the incident have a potentially disruptive impact on maritime commerce. *Great Lakes*, 513 U.S. at 534.

The source of the pollution at issue here is land-based, and there is no vessel involved. Under Ninth Circuit precedent, the location element is simply not satisfied. *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) ("The 'location' prong … focuses on whether the tort occurred on navigable water [satisfying the traditional test for maritime jurisdiction] or whether injury suffered on land was caused by a vessel on navigable water [satisfying the expanded test]."). Even if the "location" of the tort in the Water Pollution cause of action were deemed to be "on" navigable waters, ExxonMobil cited no case applying maritime jurisdiction in

---

[4] The *Redwood City* court did not say, "oil pollution in navigable waters constitutes a maritime tort." Rather, it said, "[o]il pollution in navigable waters has been deemed a tort for which the United States is entitled damages … ." *Id*. at 969–70. Indeed, the court did not even go so far as to find that the oil pollution in that case was a "maritime tort," only that the Federal Water Pollution Control Act did not preclude the United States from seeking parallel recovery under maritime tort and nuisance theories.

4

an instance where the pollution at issue originated on *land* and no vessel was involved.[5] *See*, *e.g.*, *Earth Island Inst. v. Crystal Geyser Water Co.* 521 F. Supp. 3d 863, 880 (N.D. Cal. 2021) (declining to apply maritime jurisdiction where alleged injuries relate to "the accumulation of plastic waste in the world's oceans and coastal areas and waterways").

ExxonMobil's arguments concerning the disruption-to-maritime-commerce element similarly fail. ExxonMobil cites *Foremost Ins. Co. v. Richardson* to support its argument that the Complaint alleges a potentially disruptive impact on maritime commerce, but there is no question the court was swayed by the fact that the incident involved vessels. 457 U.S. 668, 672 (1982) ("[A]n action arising out of a collision between two pleasure boats on navigable waters clearly falls within the admiralty jurisdiction of the district courts"). Again, the "incident" alleged in the Complaint is ExxonMobil's deception of consumers. The People allege that ExxonMobil is responsible for the pollution of California's environment—including its navigable waterways—because that pollution is the consequence of ExxonMobil's wrongdoing. But it is the deception and not the pollution that is the "incident" at issue, and the "general features" of that deception have nothing to do with maritime commerce.

"The primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce," and to that end, to ensure that "all operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost Ins.*, 457 U.S. at 675. In light of those driving purposes, it becomes clear that this case does not fit that mold. *Owens–Illinois, Inc. v. U.S. Dist. Ct. for W. D. of Washington,* 698 F.2d 967, 969–70 (9th Cir. 1983) ("Claim must have sufficient 'maritime flavor' for a litigant to properly invoke federal admiralty jurisdiction."). And because

---

[5] ExxonMobil misleadingly asserts that the location element is met as long as "part of the injury occurs on navigable waters," but each of the cases cited by ExxonMobil for that proposition do not support that overgeneralization. The three cases ExxonMobil cited for this contention all involved vessels that essentially tethered either the injury or the activity giving rise to the injury to navigable waters. Opp. at 8. *See*, *e.g.*, *Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005) (alleging that the Coast Guard was negligent for failing to assist foundering sea kayakers); *Espinoza v. Princess Cruise Lines, Ltd.*, 581 F. Supp. 3d 1201, 1210 (C.D. Cal. 2022) (declining to find maritime jurisdiction applied to a cruise ship passenger's injuries that occurred during a port of call excursion.); *Tobar v. United States*, 639 F.3d 1191 (9th Cir. 2011) (involving Ecuadorian commercial fishermen who brought action for damage from U.S. Coast Guard seizure of vessel on suspicion of drug smuggling).

5

there is no enclave or officer jurisdiction (as established below), there is no basis for federal jurisdiction. *See San Mateo*, 32 F.4th at 763.

### C. Maritime Jurisdiction Cannot Apply Here Unless ExxonMobil First Establishes an Independent Jurisdictional Basis

Finally, even if ExxonMobil could satisfy all three elements of the maritime jurisdiction test (which it cannot), there would still be no basis for federal jurisdiction because under the "saving-to-suitors" clause (28 U.S.C.A. § 1333(1)), federal courts do not have removal jurisdiction over admiralty or maritime cases that a plaintiff chooses to bring in state court. *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997); *Williams Sports Rentals, Inc. v. Willis,* 90 F.4th 1032, 1036 (9th Cir. 2024). Such lawsuits are exempt from removal and may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship. *Id*. ExxonMobil cites *ExxonMobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005) to argue that, as long as federal jurisdiction exists over one claim, then the court may exercise supplemental jurisdiction over the remaining claims. Opp. at 7, 8 n.20. This case is inapposite, as the court there found supplemental jurisdiction was proper when only some parties had *diversity* of citizenship. There is no diversity jurisdiction here, nor is there enclave or federal officer jurisdiction (as established below, sec. II and III, *infra*), and thus the Court still would lack removal jurisdiction. *See Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 763 (9th Cir. 2022) ("[W]hen a plaintiff brings a maritime cause of action against a person in state court, a federal court lacks admiralty jurisdiction over that claim…absent an independent jurisdictional basis.").

## II. THERE IS NO FEDERAL ENCLAVE JURISDICTION OVER PLAINTIFF'S CLAIMS

Facing the People's express disclaimer of any claims or relief for injuries to federal property, ExxonMobil offers another tortured reading of the Complaint, surmising that federal enclaves could be at issue simply because shoreline plastic pollution "inevitably" and "inherently include[s]" harm to enclaves along the California coast. [6] Opp. at 15, 16. But the fact that a state

---

[6] Where there is concurrent state jurisdiction over federal land, federal enclave jurisdiction is not a proper ground for removal. *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1003 (9th Cir. 2021). Monterey Bay National Marine Sanctuary, for instance, is subject to both federal and state law (15 C.F.R. § 922.23) and therefore removal based on injury to it would not be proper.

6

law claim relates to a problem with national or international dimensions does not transform the Complaint into one that seeks relief or alleges claims on federal enclaves. The People's express disclaimer is "sufficient to eviscerate [a defendant's] grounds for removal." *Hukkanen v. Air and Liquid Systems Corp.*, No. CV 17-2227-JFW, 2017 WL 1217075 at *2 (C.D. Cal. March 31, 2017); *see*, e.g., *Fisher v. Asbestos Corp.*, No. 2:14–cv–02338, 2014 WL 3752020 *3 (C.D. Cal. July 30, 2014) (collecting cases where waiver alone is "sufficient to justify remand."). The Court need look no further before rejecting ExxonMobil's effort to gain a federal forum.[7]

ExxonMobil incorrectly asserts that the locus test is met as long as "at least some of the locations" where the injury occurred are sufficient to invoke federal enclave jurisdiction. Opp. at 14. The Northern District has squarely rejected this broad application. *In re High-Tech Empl. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (citing *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975)) (rejecting that "federal enclave doctrine applies as long as some of the alleged events occurred on the federal enclave," and reaffirming the "locus" standard). Nor is ExxonMobil's proposition supported by the two cases it cites. Opp. at 14. *Bell v. Arvin Meritor, Inc.*, No. 12-00131-SC, 2012 WL 1110001 (N.D. Cal. 2012) found federal enclave jurisdiction proper over claims arising from exposure to asbestos on U.S. Army bases, which are federal enclaves. *Id*. at *2. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) "express[ed] no opinion on the merits" of plaintiff's removal, noting in passing that some of plaintiff's claims arose on enclaves. *Id*. at 250. Even ignoring the disclaimer, neither case addresses the hypothetical ExxonMobil presents here, where the non-federal injuries could "inherently include" yet indisputably far exceed any injury to federal enclaves. Opp. at 16. Courts have not hesitated to deny federal enclave jurisdiction where the majority of harm is non-federal. *See*, e.g., *Ballard v. Ameron Int'l Corp.*, No. 16-CV-06074-JSC, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016) (denying removal in asbestos exposure case where, inter alia, only one of seventeen exposure sites was a federal enclave).

---

[7] ExxonMobil claims the People artfully pled around federal enclave jurisdiction. Opp. at 15. The "artful pleading rule" only applies when Congress has either (1) completely preempted a state cause of action with a federal one: or (2) expressly provided for the removal of state law actions. *State by Tong v. ExxonMobil Corp.,* 83 F.4th 122, 133 (2d Cir. 2023) (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998). ExxonMobil has not shown that either applies.

ExxonMobil makes a half-hearted attempt to differentiate *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022) and *San Mateo*, claiming the Ninth Circuit in those cases "addressed totally different theories" based on the locus of conduct, not the locus of harm. Opp. at 14, 15. But since federal enclave jurisdiction "needs a direct connection between the injury and conduct," both cases readily analyze the relationship between the two. *San Mateo*, 32 F.4th at 7450 (no enclave jurisdiction where "connection between conduct on federal enclaves and the [plaintiffs'] alleged injuries is too attenuated and remote"); *Honolulu*, 39 F.4th at 1111–12 (no enclave jurisdiction where there was "no link" between the injury and the conduct). ExxonMobil does not cite a single case, nor can it, where a court held the locus of the injury alone justified enclave jurisdiction removal, without analyzing the injury's link to the conduct.

ExxonMobil's efforts to distinguish *Earth Island* are equally feeble. Even if, as a "logical matter," shoreline pollution may reach federal enclaves (Opp. at 16), *Earth Island* flatly rejected a near-identical argument, holding that a case is not subject to federal enclave jurisdiction merely because a body of water described in the Complaint is "adjacent to or near the enclave or flows into or out of it." 521 F. Supp. 3d at 878. ExxonMobil asks this court not to follow *Earth Island*, in favor of dicta pulled out of context from *Durham* and *Bell.* As discussed above, neither is analogous, and ExxonMobil fails to explain why either is on point.

*Earth Island* is not inapposite; rather, it is merely one case in a long line of authority rejecting ExxonMobil's efforts to stretch the bounds of federal enclave jurisdiction beyond recognition. ExxonMobil's standard would permit removal of purely state law claims where virtually any background event occurred at or near a federal enclave, no matter how attenuated the connection between that event and the claims. This is inconsistent with the limited jurisdiction of the federal courts. This Court should reject ExxonMobil's attempt to force such "a sweeping change to the balance between the jurisdiction of state and federal courts." *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555 (JCH), 2021 WL 2389739, at *13 (D. Conn. June 2, 2021).

NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES
(3:24-cv-07594-RGS)

### III. EXXONMOBIL'S HISTORICAL TIES TO FEDERAL OFFICERS CANNOT SUPPORT REMOVAL BECAUSE THEY ARE UNRELATED TO THE CONDUCT CHALLENGED HERE

ExxonMobil's final attempt to revise the Complaint is equally unavailing. ExxonMobil's campaign to deceive customers regarding the recyclability of single-use plastic—and the resulting environmental nuisance and pollution—has no nexus whatsoever to Standard Oil and Humble Oil's synthetic rubber production during World War II. Opp. at 4, 19. This does not change simply because some of that wartime rubber could theoretically contribute to the current global pollution crisis. The Complaint challenges ExxonMobil's marketing of *single-use plastic* as recyclable and sustainable to overproduce such plastic, which has resulted in *plastic* pollution. The Complaint certainly does not challenge any wartime activities from eight decades ago. While the lack of a relationship between ExxonMobil's misconduct and the wartime activities alone is sufficient to defeat jurisdiction, none of the other elements for federal officer jurisdiction are satisfied either, and federal officer jurisdiction does not lie.

#### A. ExxonMobil Has the Burden to Show Federal Officer Jurisdiction Exists

The "strong presumption against removal jurisdiction means that the defendant always has the burden of proving, by a preponderance of the evidence, that removal was proper." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

As ExxonMobil observed, "a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations." *Leite*, 749 F.3d at 1121–22 (likening motion to remand to standards of 12(b)(1)); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("Facial" attack accepts the truth of defendant's allegations but asserts they "are insufficient on their face" whereas a "factual" attack contests the truth of the defendant's jurisdictional allegations). ExxonMobil claims that the People cannot raise a "factual" attack to ExxonMobil's allegations because the People did not introduce evidence. Opp. at 17.

The People do not dispute ExxonMobil that Standard Oil or Humble Oil entered into contracts with the federal government. But the People *do* dispute, however, the "purely conclusory" allegations that ExxonMobil posits to claim including these entities "acted under" a

9

federal officer, and/or that there were continuing obligations that ExxonMobil assumed when it became a successor half a century later. *Shapiro v. Lundahl*, No. 16-CV-06444, 2017 WL 2902799, at *5 (N.D. Cal. July 7, 2017) ("[P]urely conclusory" allegations do not meet burden to support removal, and court should not accept them as true). The People also dispute that certain factual allegations are supported by the evidence ExxonMobil submitted, such as ExxonMobil's claim that the contracts designated Standard and Humble as "agents" of the federal government when producing rubber. (See section III. C, *infra.*) ExxonMobil bears the burden of proving removal is proper, and its jurisdictional allegations are insufficient on their face to invoke federal officer jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Knowing this, ExxonMobil now attaches to its opposition the federal contracts it omitted in its Notice of Removal. See Opp. Exs. L-R. However, these newly-submitted contracts should be disregarded because they were not authenticated,[8] but even if that flaw were overlooked, the documents fail to substantiate ExxonMobil's claims.

**B.    ExxonMobil Fails the Nexus Requirement**

Federal officer removal requires proof that the alleged wrongful conduct occurred *because of* government direction. *See*, e.g., *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017). ExxonMobil offers no relationship—let alone a causal nexus—between wartime rubber production and the "actions for which [ExxonMobil is] being sued," its deceptive marketing of the recyclability of single-use plastics. Compl. ¶¶ 85-350, 455-462.

Because there was no delegation of authority from federal agencies to ExxonMobil, nor direct control by those agencies over ExxonMobil's challenged conduct, a causal nexus is necessarily absent. Moreover, regardless of the degree of federal control, the causal connection is still insufficient because the People's claims have no relevance to any actions ExxonMobil alleges its predecessor performed under the direction of the federal government. *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 950 (E.D.N.Y. 1992) (no removal pursuant to § 1442(a)(1) where defendants were sued for "formulating and producing a product all of whose components were developed without direct government control and all of whose methods of manufacture were

---

[8] See, People's Objections to the Declaration of Dawn Sestito.

NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES
(3:24-cv-07594-RGS)

determined by the defendants"). This alone is fatal to its claim, and the Court may—and should—stop here. *See*, e.g., *Leite*, 749 F.3d at 1124 (A causal nexus sufficient to support federal officer removal exists if the "act that forms the basis of plaintiffs' claims . . . is an act that [the contractor] contends it performed under the direction of the [federal government].").

Because ExxonMobil cannot plausibly allege that wartime synthetic rubber production is the action for which the People have alleged violations, it urges this Court to ignore precedent and, in essence, eliminate the need for there to be any causal nexus at all. ExxonMobil claims—with no supporting legal authority—that the prong is satisfied merely because the production of synthetic rubber "contributed to" the plastic pollution crisis. Opp. at 24. ExxonMobil focuses on the wrong conduct. While the production of single-use plastic is necessary to show the People's injuries, it is not the source of tort liability. See *San Mateo*, 294 F. Supp. 3d at 939 (finding that defendants failed to show a "causal nexus" between the work performed under federal direction and the plaintiffs' claims for injuries stemming from climate change because the plaintiffs' claims were "based on a wider range of conduct"). Instead, the conduct that triggers ExxonMobil's liability is its use of deceptive marketing to promote the unrestrained consumption of its single-use plastic products. *Id.*; *see* also *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 131 (2d Cir. 2007) (no causal nexus to justify federal officer removal where federal regulations "say nothing" about marketing and other tortious conduct). Indeed, if ExxonMobil had simply disseminated accurate information about the recyclability of plastics, it would not incur liability under the People's Complaint, which is grounded in consumer deception. Instead, it repeatedly and deliberately misstated the efficacy of plastics recycling to convince the California public to buy more. As a result, there is no relationship between the People's Complaint and ExxonMobil's alleged predecessors' wartime manufacture of synthetic rubber. *In re Wireless Tel.*, 327 F. Supp. 2d 554, 562–63 (D. Md. 2004) (no removal where plaintiffs' claims were based on manufacturer's failure to provide warnings to consumers and manufacturers did not show the government prohibited them from providing additional information or safeguards to consumers).

Indeed, the Complaint does not take issue with the millions of tons of wartime synthetic rubber, it takes exception with single-use plastic.[9] ExxonMobil's proffered contracts govern the production of butyl and butadiene, but the Complaint makes no reference to butyl, butadiene, rubber or synthetic rubber whatsoever. Compare Notice of Removal ¶ 37 to Compl. ¶¶ 4, 15, 35, 36, 37, 194, 195, 199, 202, 244, 260, 287 (focusing on ethylene, polyethylene, and polypropylene —the building blocks for single-use plastics).

### C.    ExxonMobil Has Not Shown it "Acted Under" a Federal Officer

ExxonMobil's arguments concerning whether it "acted under" a federal officer fail. Section 1442 requires some proximity between the wrongful conduct charged in the complaint and the official acts alleged in the removal notice. *See In re MTBE Prods. Liab. Litig.*, 488 F.3d at 124-25 ("Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon."). Here, Defendant's evidence does not—and cannot—explain how anything Standard or Humble allegedly did at the behest of a federal officer during World War II relates in any way to the deception campaign that ExxonMobil waged decades later over single-use plastics. Compl. ¶¶ 3, 108 (alleging that these campaigns accelerated in the 1970s), *Id*. ¶¶ 106-113 (same). The contracts ExxonMobil invokes as the hook for federal-officer jurisdiction likewise mandate none of the deception. *Cf. Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486 (1st Cir. 1989) (jurisdiction clearly proper where defendants were under "express orders, control[,] and directions of federal officers."). That omission is fatal. *See City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191, 207 (D.N.J. 2021), aff'd sub nom. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (production of fossil fuels "during World War II .... predates [p]laintiff's allegations" of climate deception).

ExxonMobil cites *Isaacson v. Dow Chemical Co.* to support its argument that, by producing a good to government specifications during wartime, it acted under the federal government for purposes of federal officer jurisdiction. 517 F.3d 129, 136-37 (2nd Cir.1982). In *Isaacson,*

---

[9] ExxonMobil's only link between rubber and the Complaint is the Complaint's sole reference to tires (n.125), which are listed as one of inputs ExxonMobil has used in Advanced Recycling. Compl. ¶ 267. This observation is tangential to the Complaint's central allegations.

12

veterans exposed to Agent Orange sued the manufacturers of Agent Orange, and the court found federal jurisdiction proper because the federal government "delegated authority" to manufacturers to produce it. *Id*. The federal government here sold the Baytown and Baton Rouge facilities—and ended any federal oversight or control—in 1955. NOR ¶ 55. Compl. ¶¶ 128-129. The "conduct now being sued upon" is ExxonMobil's deception, which began decades later. [10] ExxonMobil points to no federal "delegated authority," direction, or control over its deceptive marketing.

Nor do the contracts demonstrate the requisite federal control. ExxonMobil presents seven contracts and five leases, claiming they "repeatedly recognize" Humble and Standard as "agents of the [Defense Production Company ("DPC")]." [11] Opp. at 22. While contracts do identify Standard and Humble as "agents" of the DPC, the DPC only oversaw construction of the plants. *See* Exs. U-W. Those contracts governing actual rubber production were actually entered into with the Rubber Reserve Company and make explicit that "nothing contained … in th[em], shall be construed as appointing [Standard and Humble] as agent of or for Reserve" for the production of rubber. [12] Such clear direction, drafted and agreed to by the actual parties to those agreements, can only support the conclusion that Standard and Humble were not agents of the federal government when producing synthetic rubber and expressly disclaimed any such claim.

The Ninth Circuit in *Honolulu* and *San Mateo* analyzed similarly tenuous efforts of oil companies to avail themselves of federal officer jurisdiction. To avoid their application, ExxonMobil claims *Honolulu* and *San Mateo* are "totally unrelated" to the case at hand because they did not address synthetic rubber production specifically. Opp. at 20. Of course, under such logic, none of ExxonMobil's evidence would be relevant to this case either since the Complaint make no allegations regarding the production of synthetic rubber during World War II.

---

[10] ExxonMobil cites *Baker v. Atl. Richfield Co.* to suggest no connection in time is required between the alleged conduct and the acts pursuant to a federal officer. 962 F.3d 937, 944 (7th Cir. 2020). *Baker* is inapposite, as the Seventh Circuit "replaced causation" of nexus with "connection" (*id.*), whereas the Ninth Circuit has not. *San Mateo,* 32 F.4th at 755.

[11] Despite claiming it has no obligation to substantiate its federal officer claims, ExxonMobil offers 32 exhibits totaling over one thousand pages in its Opposition, with no support for its contention it assumed its predecessor's obligations to the defunct federal agencies. Opp. at 19, n.28. Presumably, if ExxonMobil had a single piece of evidence demonstrating an assumption of obligations, it would have highlighted it.

[12] Declaration of Dawn Sestito ISO Opposition, Ex. L at 2 (¶ 1); Ex. M at 2 (¶ 1); Ex. O at 2 (¶ 1); Ex. P at 2 (¶ 1); Ex. Q at 2 (¶ 1); Ex. R at 2 (¶ 1); Ex. S at 2 (¶ 1); Ex. T at 2 (¶ 1).

13

ExxonMobil then claims that, unlike *Honolulu* and *San Mateo*, the wartime-rubber industry contracts at issue here "bear[] none of the hallmarks" of an arm's length business arrangement. ExxonMobil then provides several features of the contracts it believes distinguishes this case from *Honolulu* and *San Mateo*, such as (1) the federal government's "operational supervision of the plants"; 2) its "specifications" for the production of rubber; 3) its "right to inspect the sites, equipment, and record"; and 4) the exclusive nature of the contracts. Opp. at 20-22. *San Mateo* squarely found that these very features "evince an arm's-length business relationship." 32 F.4th at 758 (contracts imposing product "specifications" and the "right to inspect delivery, site, and operations "evince an arm's-length business relationship" insufficient to establish private contractors "acted under" federal officer).[13] Similar oversight has been found insufficient to show "close direction." *San Mateo,* 32 F.4th at 759.

### D.    ExxonMobil Fails to Present a Colorable Federal Defense

ExxonMobil contends it raises a colorable government federal contractor immunity defense because the production of wartime synthetic rubber was done pursuant to federal government specifications.[14] Opp. at 23. The government contractor defense is meant to "protect[] contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1028–29 (D. Haw. 2012), aff'd, 749 F.3d 1117 (9th Cir. 2014) (internal quotation marks omitted). As an affirmative defense, the burden of proof lies squarely with ExxonMobil. *Id.* at 1030.

ExxonMobil's argument again relies on the same unauthorized attempt to completely rewrite the conduct challenged in the Complaint. The People allege no design defect with synthetic rubber, nor do the People challenge the production of millions of tons of wartime

[13] Nor does ExxonMobil provide evidence showing the federal government maintained "day-to-day" oversight and supervision of synthetic rubber production. The People parsed through ExxonMobil's voluminous citations. *See* Opp. at 19:23-20:1, n.29. The proffered citations for the contracts governing rubber production (Exs. L-R) detail contract specifications for the finished product's manufacture and testing but do not mention the federal government's "day-to-day" supervision of plant operations. ExxonMobil also relies again on *ExxonMobil,* 108 F. Supp. 3d 486, though it acknowledges that the court cannot judicially notice the truth of the facts contained within it. Opp. at 22, n.32.

[14] ExxonMobil's Opposition offers no further elaboration regarding any First Amendment and preemption defenses, thus warranting its summary rejection. *See Honolulu v. Sunoco LP*, 39 F.4th 1101, 1110 (9th Cir. 2022).

14

synthetic rubber, or injuries resulting from the manufacture of wartime synthetic rubber that would bring this action within the purview of *Winters* and its progeny. ExxonMobil's claim that supplying the federal government with rubber components during World War II somehow shields ExxonMobil from liability for its deceptive statements regarding plastic is absurd. Opp. at 23.

In adopting the three-part test for the federal contractor defense, the Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) identified that the first two prongs would be met if the design flaw (in that case the helicopter escape hatch) was part of the government specification that brought forth the liability (death from a helicopter crash). *Id*. at 512 ("The first two of these conditions assure … that the design feature in question was considered by a Government officer, and not merely by the contractor itself.").

ExxonMobil cannot establish the first two prongs because it cannot identify in the Complaint any government-approved design flaw in its butadiene, butadiene catalyst, or butyl production—let alone a design flaw that caused harm, and definitely not a design flaw that caused the plastic pollution harms alleged in the Complaint. Butadiene, butadiene catalyst, and butyl are distinctly different materials than the components of single-use plastics, such as ethylene, propylene, polyethylene, and polypropylene, that are at issue in the complaint. Any government specification regarding these synthetic rubber components is irrelevant to the plastic pollution harm alleged in the Complaint. *See Getz v. Boeing Co.*, 654 F.3d 852, 861 (9th Cir. 2011) ("When the government engages in a thorough review of *the allegedly defective design* and takes an active role in testing and implementing that design, *Boyle*'s first element is met.") (emphasis added).

ExxonMobil likewise fails to establish prong three. Even if "nothing suggests that ExxonMobil knew any more than the federal government, even if there were some (unidentified) inherent danger to synthetic rubber" (Opp. at 24), again, synthetic rubber is demonstrably not the plastic pollution harm identified in the Complaint.

## CONCLUSION

For the foregoing reasons, the People respectfully request that the Court grant its motion.

15

Dated:  January 30, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
VANESSA MORRISON
Supervising Deputy Attorneys General



 /s/ Hallie Kutak
HALLIE KUTAK
ELIZABETH RUMSEY
Deputy Attorneys General
*Attorneys for Plaintiff The People of the*
*State of California ex rel. Rob Bonta*
*Attorney General of California*

LA2024803779
67392978.docx

16

NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES
(3:24-cv-07594-RGS)