ROB BONTA
Attorney General of California
DANIEL A. OLIVAS (SBN 130405)
Senior Assistant Attorney General
DENNIS L. BECK, JR. (SBN 179492)
Acting Senior Assistant Attorney General
DEBORAH M. SMITH (SBN 208960)
VANESSA MORRISON (SBN 254002)
Supervising Deputy Attorneys General
ELIZABETH B. RUMSEY (SBN 257908)
STACY LAU (SBN 254507)
AMAYA RAMSAY-MALONE (SBN 357396)
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 879-0860
 Fax: (510) 622-2270
 E-mail: Deborah.Smith@ doj.ca.gov
         Vanessa.Morrison@doj.ca.gov
         Liz.Rumsey@doj.ca.gov
*Attorneys for Plaintiff, The People of the State of
California ex rel. Rob Bonta Attorney General of
California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA, ex rel. ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA,**<br><br>Plaintiff,<br><br>v.<br><br>**EXXON MOBIL CORPORATION; AND DOES 1 THROUGH 100, INCLUSIVE,**<br><br>Defendants. | 3:24-cv-07594-RGS<br><br>**THE PEOPLE OF THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANT EXXON MOBIL CORPORATION'S MOTION FOR STAY OF REMAND ORDER**<br><br>Date:        TBD<br>Time:        1:30 p.m.<br>Dept:        Courtroom 3, 17th Floor<br>Judge:       The Hon. Richard G. Seeborg<br>Trial Date: TBD<br>Action Filed: September 23, 2024 |

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................................... 1

Procedural Background ......................................................................................................... 1

Argument .............................................................................................................................. 2

I.    ExxonMobil Has Not Shown a Likelihood of Success on Appeal ........................ 3

    A.    ExxonMobil Is Unlikely to Succeed on its Maritime Jurisdiction Argument ................................................................................................ 3

    B.    ExxonMobil Is Unlikely to Succeed on its Federal-Enclave Jurisdiction Argument ................................................................. 5

    C.    ExxonMobil Is Unlikely to Succeed on its Federal-Officer Jurisdiction Argument ................................................................. 7

II.    ExxonMobil Will Not Suffer Irreparable Harm if the Case Proceeds in State Court ................................................................................................. 8

III.    The Balance of Harms Analysis Favors Denying the Requested Stay and Allowing This Matter To Proceed In State Court ................................................. 11

Conclusion ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

CASES

Al Otro Lado v. Wolf
  952 F.3d 999 (9th Cir. 2020) ............................................................................... 2, 8, 9

Ballard v. Ameron Int'l Corp.
  No. 16-cv-06074, 2016 WL 6216194 (N.D. Cal. Oct. 25, 2016) ............................... 7

Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.
  423 F. Supp. 3d 1066 (D. Colo. 2019) ................................................................... 13

Blumberger v. California Hospital Medical Center
  No. 222-cv-06066, 2022 WL 18359101 (C.D. Cal. Dec. 5, 2022) ......................... 10

Bradberry v. T-Mobile USA, Inc.
  No. C 06 6567, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ................................. 13

California by & through Harrison v. Express Scripts, Inc.
  No. 2:23-cv-08570, 2024 WL 841197 (C.D. Cal. Feb. 28, 2024) ........................... 12

Carrillo v. Sela Healthcare, Inc.
  No. 5:21-cv-00150, 2021 WL 4556421 (C.D. Cal. Sept. 8, 2021) ......................... 10

City & County of Honolulu v. Sunoco LP
  No. 21-15313, 2021 WL 1017392 (9th Cir. Mar. 13, 2021)............................... 9, 10

Cnty. of San Mateo v. Chevron Corp.
  32 F.4th 733 (9th Cir. 2022)........................................................................ 4, 5, 6, 7

Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.
  No. SA-cv-09681, 2017 WL 116319186 (C.D. Cal. Nov. 3, 2017) ........................... 9

Demartini v. Demartini
  964 F.3d 813 (9th Cir 2020)...................................................................................... 2

Doe #1 v. Trump
  957 F.3d 1050 (9th Cir. 2020)............................................................................. 8, 11

Durham v. Lockheed Martin Corp.
  445 F.3d 1247 (9th Cir. 2006)................................................................................... 7

Estate of Palfy v. Del Dios Care, LLC
  No. 22-cv-0048, 2022 WL 1017892 (S.D. Cal. Apr. 5, 2022)................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Gavert by and through Gavert v. CF Modesto, LLC*, No. 1:21-cv-01719 2022 WL
    705613, at *1 (E.D. Cal. Mar. 9, 2022), *aff'd*, No. 22-15516, 2023 WL
    4105203 (9th Cir. June 21, 2023)............................................................. 9

*Hiken v. Dep't of Defense*
    No. C 06-02812, 2012 WL 1030091 (N.D. Cal. Mar. 27, 2012) ........................ 11

*In re High-Tech Empl. Antitrust Litig.*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) .......................................... 7

*In re Mission Bay Jet Sports, LLC*
    570 F.3d 1124 (9th Cir. 2009)........................................................ 4

*Jefferson Cnty. v. Acker*
    527 U.S. 423 (1999) ..................................................................... 8

*Kohlasch v. New York State Thruway Auth.*
    460 F. Supp. 956 (S.D.N.Y. 1978)............................................... 4

*Leiva-Perez v. Holder*
    640 F.3d 962 (9th Cir. 2011)........................................................ 8

*Nathanson v. Polycom, Inc.*
    2015 WL 12964727 (N.D. Cal. Apr. 16, 2015) ........................... 5

*Nken v. Holder*
    556 U.S. 418 (2009) ....................................................... 2, 3, 10, 12

*Owens-Illinois, Inc. v. U.S. Dist. Ct. for W. D. of Washington*
    698 F.2d 967 (9th Cir. 1983)........................................................ 3

*Plaquemines Par. v. Chevron USA, Inc.*
    84 F.4th 362 (5th Cir. 2023)........................................................ 12

*Taghadomi v. United States*
    401 F.3d 1080 (9th Cir. 2005)...................................................... 4

*Virginian Ry. Co. v. United States*
    272 U.S. 658 (1926) ..................................................................... 2

*Walek v. Boeing Co.*
    2016 WL 11757923 (C.D. Cal. Mar. 14, 2016) ......................... 10

*Washington v. Monsanto Co.*
    No. C17-53, 2018 WL 9669810 (W.D. Wash. Mar. 28, 2018) ............... 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

18 U.S.C.
  § 2701, *et seq.* ........................................................................................................ 13
  § 2703 ......................................................................................................................... 13

28 U.S.C.
  § 1442 ........................................................................................................................... 9
  § 1442(a) ...................................................................................................................... 8
  § 1447 ......................................................................................................................... 10
  § 1447(c) ...................................................................................................................... 2
  § 1447(d) ............................................................................................................... 8, 10

The People's Opposition to Defendant ExxonMobil's Motion for Stay of Remand Order (3:24-cv-07594-RSG)

**INTRODUCTION**

Defendant ExxonMobil Corporation ("ExxonMobil") has not met its burden of demonstrating that a stay of this case pending an appeal is warranted. ExxonMobil's argument that a stay is warranted on the basis that it has "serious" legal arguments on appeal is unconvincing, particularly considering the dim view this Court expressed about each of ExxonMobil's federal jurisdiction arguments. ExxonMobil's claim of federal-officer jurisdiction—the sole basis for appellate review here—is without a scintilla of merit, as this Court already found. ExxonMobil should not be permitted to further delay the rightful remand of this case based on a jurisdictional argument that this Court remarked "verges on absurd." (*See* concurrently filed Declaration of Elizabeth Rumsey ("Rumsey Decl."), Mot. to Remand Tr. at 6:3, Feb. 13, 2025.) Further, ExxonMobil utterly fails to establish that allowing this case to proceed in state court would result in irreparable harm. For these reasons, the stay should be denied.

**PROCEDURAL BACKGROUND**

The People of the State of California, ex rel. Rob Bonta, Attorney General of California ("People") filed this action against ExxonMobil and Does 1 through 100 on September 23, 2024. Dkt. 1-1, Ex. 1 ("Compl."). ExxonMobil removed the action to federal court on November 1, 2024, Dkt. 1, bringing state court proceedings to a standstill and, thereby, effectively staying commencement of any discovery. The People moved to remand the action to state court on December 9, 2024, Dkt. 19, and the Court heard that motion on February 13, 2025.

In advance of the hearing, the People approached ExxonMobil to ask whether, in the event the Court granted the People's motion for remand, ExxonMobil intended to appeal and request a stay of the remand order. (*See* Rumsey Decl. ¶ 3, Exh. A.) If so, the People indicated they would oppose a stay but would like to explore whether the parties could reach an agreement regarding next steps in the litigation instead. (*Id*. ¶ 6.) The People understood that should the case be remanded, ExxonMobil intended to file several motions challenging jurisdiction as well as the sufficiency of the Complaint. (*Id*. ¶ 5.) As there was not sufficient time for the parties to discuss

1

the issue prior to the hearing, they agreed to request that—should the Court grant the motion and issue an order remanding the matter to state court—the Court impose a "short administrative stay" of the execution of that order. (*Id*. ¶ 6.) The purpose of that short administrative stay was to allow the parties time to continue their discussion regarding next steps in the litigation should the case be remanded to state court. (*Id*.)

This Court issued its remand order on February 24, 2025 (Dkt. 28, "Order") and imposed a 42-day stay on execution of the order, that expires on April 7, 2025. (*Id*.) That stay is longer than the People anticipated. (Rumsey Decl. ¶ 7.) On March 11, 2025, ExxonMobil filed a notice of appeal of the remand order and moved for a stay pending appeal. The People strongly oppose any further stay of the remand order.

**ARGUMENT**

Under 28 U.S.C. § 1447(c), "[i]f at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See also Demartini v. Demartini*, 964 F.3d 813, 818 (9th Cir 2020). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). Rather, whether to issue a stay is within the court's discretion and depends on the circumstances of the particular case. *Nken v. Holder*, 556 U.S. 418, 427, 433 (2009) (citing *Virginian Ry. Co.*, 272 U.S. at 672-73). ExxonMobil has not shown that the circumstances justify an exercise of the Court's discretion to issue a stay. *See Nken*, 556 U.S. at 433–34.

Courts apply a four-factor test in determining whether a stay pending appeal is warranted: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (Mot. for Stay (Dkt. 33, "Mot.") at 3, citing *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken*, 556 U.S. at 434).) Although ExxonMobil argues it is entitled to the benefit of a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another," *see Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir.

2

2020) (quotation omitted), it still fails to carry its burden as to any of the four factors. Therefore, the motion should be denied.

## I.    EXXONMOBIL HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON APPEAL

ExxonMobil bears a demanding burden in establishing a likelihood of success on any of its three federal jurisdiction arguments. This Court's order characterized ExxonMobil's argument for removal on the basis of federal-officer jurisdiction as "fanciful," and called its federal enclave argument "misguided, to say the least." And during the hearing, the Court called Exxon's federal maritime argument "a complete stretch." (Rumsey Decl., Exh. B, Mot. to Remand Tr. at 10:6–9.) Indeed, ExxonMobil implicitly concedes—as it must—that it is "weaker" on this element of the stay test. (Mot. at 6, noting that it has made a "sufficient" showing on this element under the sliding scale approach considering what it suggests is a "stronger showing" of irreparable harm.) But ExxonMobil's showing here is not just "weak," it fails altogether. None of ExxonMobil's jurisdictional arguments has even a scintilla of merit. Even if the bar is as low as ExxonMobil says it is (that is, that it need only show a "fair prospect" of success rather than make a "strong showing [that it is] likely to succeed," *Nken*, 556 U.S. at 434, ExxonMobil does not clear that bar here.

### A.    ExxonMobil Is Unlikely to Succeed on its Maritime Jurisdiction Argument

ExxonMobil's motion focuses primarily on the application of the "savings to suitors" (or "Savings") clause to California's claims. (Mot. at 6–7.) But that clause only applies if maritime jurisdiction exists in the first place—which, the Court has held, it does not. (Order at 11–12.) Simply put, the central question for maritime jurisdiction is whether the People's claims regarding ExxonMobil's deception about the recyclability of plastics have the requisite "significant relationship to traditional maritime activity" (or "maritime flavor") to fall within the scope of admiralty law. *Owens-Illinois, Inc. v. U.S. Dist. Ct. for W. D. of Washington,* 698 F.2d 967, 970 (9th Cir. 1983). All other elements of the maritime jurisdiction test—whether the alleged harms pose a threat to maritime commerce, whether the underlying conduct occurred in navigable waters, and whether the claims involve a vessel—are an effort to ferret out that fundamental

3

1    issue. *See*, *e.g.*, *id.* at 969–71. Here, the answer to all these questions is an unequivocal "no."  As

2    the People already explained at length in prior briefing on the issue (*see* People's Mot. for

3    Remand (Dkt. 19, "Remand Mot.") at 5–10; People's Reply in Support of Remand (Dkt. 24,

4    "Reply") at 2–6), and for reasons this Court already recognized, maritime jurisdiction does not lie

5    where the source of the pollution at issue is land-based, and there is no vessel involved. *In re*

6    *Mission Bay Jet Sports, LLC*, 570 F.3d 1124 (9th Cir. 2009) ("The 'location' prong … focuses on

7    whether the tort occurred on navigable water [satisfying the traditional test for maritime

8    jurisdiction] or whether injury suffered on land was caused by a vessel on navigable water

9    [satisfying the expanded test].").

10       While ExxonMobil reiterates arguments made in its opposition to the People's motion for

11   remand, it does not explain how they are "serious legal arguments on appeal." (Mot. at 7.) Neither

12   of ExxonMobil's cited cases supports the theory that a corporation's public deception about the

13   recyclability of plastics—which bears no relationship to traditional maritime activity—could lead

14   to a finding of maritime jurisdiction. *Cf. Taghadomi v. United States*, 401 F.3d 1080, 1083–84

15   (9th Cir. 2005) (concerning Coast Guard's allegedly negligent failure to communicate to rescuers

16   regarding a kayak in distress); *Kohlasch v. New York State Thruway Auth.*, 460 F. Supp. 956, 962

17   (S.D.N.Y. 1978) (concerning discharge into waterway that impaired navigational rights).

18   ExxonMobil attempts to obfuscate this issue by making incorrect assertions about the Savings

19   clause. But because ExxonMobil cannot establish any element of the federal maritime jurisdiction

20   analysis, the question of whether the Savings clause applies is irrelevant because the clause

21   pertains only if ExxonMobil could establish maritime jurisdiction in the first place.

22       Nevertheless, ExxonMobil suggests that there is a "serious legal argument" that the Savings

23   clause "should not have applied here" because the People allegedly waived the issue. (Mot. at 6–

24   7.) But as this Court explained, the People "repeatedly cited *San Mateo II* [*Cnty. of San Mateo v.*

25   *Chevron Corp.*, 32 F.4th 733, 764 n.25 (9th Cir. 2022)] in its motion, putting Exxon on notice

26

27

28
                                              4

that the case would inform the remand analysis" and therefore did not waive the issue. (Order at 11.)[1] ExxonMobil does not cite a single case finding waiver on similar facts.[2]

ExxonMobil's argument that the Savings clause "would be inapplicable on the merits" is similarly groundless. (Mot. at 7.) ExxonMobil's sole authority for this is a footnote in which the *San Mateo II* court noted that certain arguments against application of the Savings clause had been waived, 32 F.4th at 764 n.25, which is hardly support for ExxonMobil's claim that these waived arguments present serious legal questions on appeal. ExxonMobil has not cited even one case that has adopted or at least addressed either of the propositions "left unaddressed" in *San Mateo II*. (Mot. at 7.)

More importantly, *it does not matter*, because this Court expressly found no maritime jurisdiction: "California's claims are not maritime in nature." (Order at 11; *see also id*. at 12 (noting, "maritime jurisdiction would be inapplicable anyway.").) Neither this Court nor the appellate court needs to resolve these Savings clause arguments. ExxonMobil's strenuous efforts to avoid application of the Savings clause only underscore that it has no other basis for federal jurisdiction. ExxonMobil cannot establish that maritime jurisdiction lies, so it is not necessary even to reach the application of the Savings clause.

**B.    ExxonMobil Is Unlikely to Succeed on its Federal-Enclave Jurisdiction Argument**

ExxonMobil claims it has a "fair prospect of success" on its federal-enclave jurisdiction argument. (Mot. at 8.) To overcome the Court's ruling regarding a lack of federal enclave jurisdiction in this matter, ExxonMobil asserts that there is no "binding authority" affirming the

---

[1] Moreover, ExxonMobil concedes that the Ninth Circuit "has not addressed whether a timely *generalized* objection to removal jurisdiction avoids waiver" (Mot. at 7, italics added); here, the People made both a timely and *very specific* objection to removal on the basis of maritime jurisdiction.

[2] ExxonMobil relies on *Nathanson v. Polycom, Inc.*, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) for the proposition that an argument or issue is waived where it is raised for the first time on reply. But at issue there was a wholly distinct basis for non-liability, and nothing suggests that defendants there were "on notice" that the argument might come into play.

5

right of the People to disclaim conduct occurring or harms arising on federal lands in the

complaint. (Mot. at 8.) But ExxonMobil points to no authority supporting its argument, and there

is ample authority to the contrary. *See* Order at 8 (citing *City of Oakland v. BP PLC*, 969 F.3d

895, 904 (9th Cir. 2020) and *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) for the

proposition that the plaintiff is "master[] of the claim"); *see also* People's Reply at 7 (citing

*Fisher v. Asbestos Corp.*, No. 2:14–cv–02338, 2014 WL 3752020, at *3 (C.D. Cal. July 30, 2014)

and other cases recognizing that a waiver of claims that would support federal jurisdiction

suffices to justify remand). Notwithstanding those authorities, ExxonMobil suggests that there is

a "fair prospect" that the Ninth Circuit would "reject such disclaimers," noting that there is a rule

against "artful pleading to defeat removal by omitting to plead necessary federal questions in a

complaint." (Mot. at 8, quoting *ARCO Env't Remediation, L.L.C. v. Dep't of Health and Env't*

*Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000).) The People can hardly be accused of

"artful pleading" here, where what is disclaimed is not a "necessary federal question" (which

ExxonMobil declines to identify), but a small fraction of the total conduct and total harm at issue.

Indeed, even if it were true that the People cannot disclaim conduct or harms on federal

lands, that would not change the analysis here. As this Court recognized, federal enclave

jurisdiction still would not lie because the People's claims do not "arise" on federal enclaves. *San*

*Mateo II*, 32 F.4th at 749 ("[T]he Counties have not alleged that their claims are based on torts

taking place on a federal enclave."). As this Court recognized, that is true regardless of whether

the focus of the analysis is ExxonMobil's deceptive marketing (i.e., the conduct) or the resulting

harm to California caused by plastic pollution, neither of which have their "loci" on federal

enclaves. (Order at 9.) The fact that plastic pollution "touches on" federal enclaves is not enough

to change that. (*Id.*)

Citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006),

ExxonMobil reiterates its assertion that it is sufficient that "some" of the alleged injuries occurred

on federal enclaves. (Mot. at 8.) This is well-trodden ground. As the People explained in their

Reply in support of their remand motion (at 7), the *Durham* court's observation that the plaintiff

6

there could have "attempted to remove on federal enclave grounds" because "some of [its] claims arose on federal enclaves" is weightless not only because it is dicta, but also because there is clear authority to the contrary. *See, e.g.*, *In re High-Tech Empl. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (citing *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975)) (rejecting that "federal enclave doctrine applies as long as some of the alleged events occurred on the federal enclave," and reaffirming the "locus" standard); *Ballard v. Ameron Int'l Corp.*, No. 16-cv-06074, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016) (denying removal in asbestos exposure case where, *inter alia*, only one of seventeen exposure sites was a federal enclave). *See also San Mateo II*, 32 F.4th at 749–750 (finding that federal enclave jurisdiction did not lie, not just because only "some" of the tortious *conduct* took place on federal enclaves, but also because plaintiffs cabined their injuries to non-federal lands, alleging harm only "to real property and infrastructure within their local jurisdictions").

### C. ExxonMobil Is Unlikely to Succeed on its Federal-Officer Jurisdiction Argument

ExxonMobil acknowledges that this Court expressed "skepticism" of its argument for removal under the federal-officer doctrine. (Mot. at 8.) That is putting it mildly. ExxonMobil's arguments about its predecessor's alleged World War II-era rubber production "miss[] the boat entirely," because the People allege "ExxonMobil promoted a deceptive marketing campaign to deceive the public about *plastic.*" (Order at 10.) The Complaint "is not about pollution in the abstract … ." (*Id.*)

Even if ExxonMobil could convince the Ninth Circuit that "rubber and plastic are more closely related than colloquial understanding might suggest" (Mot. at 9), this would not change the outcome of whether federal officer jurisdiction exists here. It is not necessary for this Court or the appellate court to determine the precise chemical relationship between rubber and plastic to find that ExxonMobil's federal-officer removal argument fails. It fails even more fundamentally because ExxonMobil *does not even suggest*, let alone support, that the federal government directed ExxonMobil to engage in a decades-long campaign of public deception about the

7

viability of recycling as a solution to the plastics (or rubber) pollution crisis. That is the conduct that is at the heart of each of the People's claims, thus the "act" that is the focus of the federal-officer analysis. 28 U.S.C. § 1442(a); *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (the availability of federal-officer removal turns on a "'causal connection' between the *charged* conduct and asserted official authority") (emphasis added) (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

In its efforts to avail itself of federal-officer jurisdiction, ExxonMobil attempts first to revise the People's Complaint to center ExxonMobil's *manufacture* of plastic as the allegedly wrongful conduct, then to stretch that distortion even further by equating plastic and rubber. But the People nowhere allege in the Complaint wrongdoing in connection with ExxonMobil's production of plastic (or rubber). As is clear in the People's pollution-related causes of action, it is ExxonMobil's wrongful *deception* that allowed it to quite literally flood the market with plastic products, resulting in the alleged harms. In short, even if plastic is rubber and rubber is plastic, there are even lower-hanging fruits to support the Court's conclusion that federal-officer jurisdiction does not lie in this matter.

## II.  EXXONMOBIL WILL NOT SUFFER IRREPARABLE HARM IF THE CASE PROCEEDS IN STATE COURT

In addition to failing to show a likelihood of success on the merits, ExxonMobil has not shown that it will suffer "likely irreparable injury" if the case proceeds in state court while its appeal is pending. *Al Otro Lado*, 952 F.3d at 1007 (citing *Nken*, 556 U.S. at 434). ExxonMobil's burden regarding irreparable harm is even higher than it is on the likelihood-of-success prong, because ExxonMobil must show "that an irreparable injury is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 965. ExxonMobil's unsupported and speculative arguments do not meet this burden. *See Doe #1 v. Trump*, 957 F.3d 1050, 1058–60 (9th Cir. 2020).

Specifically, ExxonMobil argues that it would be irreparably harmed without a stay because its statutory right to appeal its federal-officer jurisdiction claim under 28 U.S.C. § 1447(d) would be "moot" if it were forced to litigate in state court while the federal appeal is pending. (Mot. at

4.) As many courts within this circuit have found, this generalized argument is meritless. *See, e.g., City & County of Honolulu v. Sunoco LP*, No. 21-15313, 2021 WL 1017392, at *1 (9th Cir. Mar. 13, 2021) (denying stay pending appeal of remand order where defendants claimed jurisdiction under the federal-officer removal statute); *Estate of Palfy v. Del Dios Care, LLC*, No. 22-cv-0048, 2022 WL 1017892, at *5 (S.D. Cal. Apr. 5, 2022) (denying defendant's request for stay to "allow Defendant its right to appeal" remand based on federal-officer jurisdiction claim); *Gavert by and through Gavert v. CF Modesto, LLC*, No. 1:21-cv-01719 2022 WL 705613, at *1 (E.D. Cal. Mar. 9, 2022), *aff'd*, No. 22-15516, 2023 WL 4105203 (9th Cir. June 21, 2023) (same) (collecting cases). Remand to state court neither prevents ExxonMobil from pursuing its appeal, nor does it render ExxonMobil's appeal "moot." *See Washington v. Monsanto Co.*, No. C17-53, 2018 WL 9669810, at *1 (W.D. Wash. Mar. 28, 2018) (denying stay as defendants "will be able to pursue an appeal of the remand order—indeed, that appeal is currently ongoing"); *Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*, No. SA-cv-09681, 2017 WL 116319186, at *5 (C.D. Cal. Nov. 3, 2017) (denying stay as "state court proceedings do not prevent defendants' appeal from being heard"). In fact, ExxonMobil's appeal has already been docketed, and a briefing schedule has been set.

As ExxonMobil concedes, any potential expense and inefficiency that could arise from litigating in both federal and state courts do not rise to the level of irreparable harm. (Mot. at 5, quoting *City & County of Honolulu*, 2021 WL 1017392 at *2-3 (finding that litigation burdens and possible inefficiencies if the federal court later finds the cases were properly removed would not constitute irreparable harm).) *See also Al Otro Lado*, 952 F.3d at 1008 ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended…are not enough.") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Moreover, contrary to ExxonMobil's assertions, the fact that removal was based in part on the federal-officer removal statute, 28 U.S.C. § 1442, confers no special weight upon ExxonMobil's stay request. While section 1447(d) allows ExxonMobil a statutory right to file an

9

1    appeal of this court's order denying federal-officer jurisdiction, it "does not provide for a stay of

2    execution pending such appeal." *Carrillo v. Sela Healthcare, Inc.*, No. 5:21-cv-00150, 2021 WL

3    4556421, at *5 (C.D. Cal. Sept. 8, 2021) (quoting *Poore v. State of Ohio*, 243 F. Supp. 777, 782

4    (N.D. Ohio 1965)) (denying stay of remand while defendant appeals denial of federal-officer

5    jurisdiction); *Blumberger v. California Hospital Medical Center*, No. 222-cv-06066, 2022 WL

6    18359101, at *2 (C.D. Cal. Dec. 5, 2022) ("The fact that Congress has *allowed* a removing party

7    to seek appellate review before an action is remanded, does not *require* a district court to stay

8    automatically execution of a remand order" to allow the appeal). Nor does section 1447(d) bear

9    upon on the application of the well-established *Nken* factors, as well as the court's sound

10   discretion, which govern the determination whether a stay is warranted. *See Carillo*, 2021 WL

11   4556421 at *5 ("As § 1447 does not provide for a stay of execution pending such appeal, the

12   grant or denial of a stay 'rests squarely in the sound discretion of the district court.'") (quoting

13   *Poore*, 243 F. Supp. at 782). The *Nken* factors—including the requirement to show a non-

14   speculative and probable irreparable injury—apply here in the same manner that they would

15   apply to any motion for stay pending appeal.

16        In support of its stay request, ExxonMobil cites primarily unpublished, out-of-circuit

17   district court decisions for the proposition that simultaneous court proceedings can lead to

18   irreparable harm because the state court could decide the merits of the claims before the appeal is

19   exhausted. Those cases are neither binding nor persuasive, and they conflict with the findings of

20   the many courts within this circuit which have ruled otherwise. *See, e.g., City & County of

21   Honolulu*, 2021 WL 1017392 at *1 (explaining that "theoretical possibility that state court could

22   irrevocably adjudicate the parties' claims and defenses while these appeals are pending also falls

23   short of meeting the demanding irreparable harm standard"); *Walek v. Boeing Co.*, 2016 WL

24   11757923, at *4 (C.D. Cal. Mar. 14, 2016) (where defendant had not shown proceeding in federal

25   court was proper, the court could not find that proceeding in state court would constitute

26   irreparable harm). The prospect of simultaneous litigation, and adjudication of parties' claims in

27   one court while claims are pending in another, is present any time litigation proceeds pending

28                                          10

1    appeal. These circumstances are unremarkable and do not support a demonstration of

2    "irreparable" injury.

3        The single Northern District of California case that ExxonMobil cites, *Hiken v. Dep't of*

4    *Defense*, No. C 06-02812, 2012 WL 1030091, at *2 & n.7 (N.D. Cal. Mar. 27, 2012), did not

5    concern a request to stay remand to state court, but rather an emergency motion for administrative

6    stay of disclosure of government information with "important national security implications."

7    (Mot. at 4.) *Hiken* is completely inapposite, because in that case, the court found an irreparable

8    injury where "confidentiality [would] be lost for all time" if documents were "surrendered

9    pursuant to the [district] court's order." *See id.* (quoting *Providence Journal Co. v. Fed. Bureau*

10   *of Investigation*, 595 F.2d 889, 890 (1st Cir.1979)). Unlike here, the irreparable injury in *Hiken*

11   was not merely about having to litigate a case in two forums, but also about important national

12   security implications that are not present in this case.

13       Lastly, ExxonMobil's arguments that its as-yet-to-be-filed motion to quash for lack of

14   personal jurisdiction in state court, and that court's decision and potential appeal regarding this

15   as-yet nonexistent motion, will be concluded by the time the Ninth Circuit Court of Appeals

16   makes a decision regarding remand, are incredibly speculative. Those proceedings are still in their

17   infancy, including that discovery has not yet commenced. Meanwhile, as noted above, the Ninth

18   Circuit has already issued a briefing schedule with ExxonMobil's opening brief due on April 22,

19   2025, and the People's responsive brief due on May 22, 2025. ExxonMobil's predictions about

20   the relative future progress of the state court proceeding and federal appeal consist of nothing

21   more than "conclusory factual assertions and speculative arguments," which fail to meet the

22   burden of showing irreparable harm. *Doe #1 v. Trump*, 957 F.3d at 1059.

23   **III.   THE BALANCE OF HARMS ANALYSIS FAVORS DENYING THE REQUESTED STAY AND
         ALLOWING THIS MATTER TO PROCEED IN STATE COURT**

24

25       The third and fourth factors, which require weighing any harm to the opposing party and

     the public interest, merge when the government is the opposing party. *Nken*, 556 U.S. at 435.

26

     These factors weigh heavily against a stay.

27

28                                            11

First, a stay of the remand order would substantially harm the public's interest in preventing further plastic pollution. As alleged in the Complaint, the plastic waste and pollution crisis is ongoing and severe, and further delays in the efficient disposition of this case will only result in further irreversible harm to California's environment, wildlife, natural resources, and people. (*See* Compl. ¶ 2.) Additional delay in the resolution of this case will amplify the irreparable harm to the public caused by allowing ExxonMobil to continue deceiving the public regarding the viability of recycling as a solution to the plastic pollution crisis while simultaneously rapidly increasing its plastic petrochemicals production. *See Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 377 (5th Cir. 2023) (finding a strong public interest in preventing further loss of Louisiana coastline due to climate change because the "protection of Louisiana's coast is … a matter of extreme urgency" and the "loss of the coast is an active 'crisis'"). As highlighted in the Complaint:

> In 2022 alone, estimates of the amount of plastic waste leaked to land and into the ocean in California ranged from 121,324 to 179,656 tonnes—the equivalent of dumping 20 to 30 garbage trucks of plastic waste *per day* into California's landscapes and waterways.

(Compl. ¶ 2.) When the People seek to abate a public nuisance that is "an ongoing … crisis of unprecedented dimensions," the public interest weighs against a stay. *California by & through Harrison v. Express Scripts, Inc.,* No. 2:23-cv-08570, 2024 WL 841197, at *6 (C.D. Cal. Feb. 28, 2024).

Second, a stay of the remand order would further delay the progress of the case, causing considerable harm to the People as plaintiffs, who have an interest in the efficient resolution of legal disputes. *See, e.g., Nken*, 556 U.S. at 435 (holding that "[t]here is always a public interest in prompt execution" of the law); *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1075 (D. Colo. 2019) ("the public interest is furthered by the timely conclusion of legal disputes…."). A stay would also harm the public interest in judicial economy. *See Bradberry v. T-Mobile USA, Inc.,* No. C 06 6567, 2007 WL 2221076, at *5 (N.D. Cal. Aug. 2, 2007) ("Because Defendant does not have a strong likelihood of success on appeal, a

1   stay may not result in the conservation of judicial resources. Therefore, the public interest in

2   judicial economy does not strongly favor granting a stay."). Discovery would be delayed, which

3   poses a substantial risk that critical evidence will be lost or destroyed. *See id.* at *4 (explaining

4   that "the risk of lost evidence weighs against granting a stay").

5        Here, the People have identified several key witnesses whose age and infirmity presents a

6   serious risk that they will be unavailable for depositions should discovery be further stayed. (*See*

7   Rumsey Decl., ¶ 4.) Further, crucial for the People's claims under California's consumer

8   protection laws, ExxonMobil's postings and advertisements on social media sites are subject to

9   the Federal Stored Communications Act. *See* 18 U.S.C. § 2701, *et seq*. Section 2703 of this Act

10  appears to limit the time that social media entities can be required to preserve data to 180 days. 18

11  U.S.C. § 2703. There is thus a serious risk that this essential evidence may be destroyed before

12  discovery resumes should a stay be granted. This presents a probable and significant risk of harm

13  to plaintiff.

14                                   **CONCLUSION**

15       For the foregoing reasons, ExxonMobil's motion for stay of the remand order should be

16  denied, and the remand order promptly sent to the state court.

17  Dated:  March 25, 2025                    Respectfully submitted,

18                                            ROB BONTA
                                             Attorney General of California
19                                           DANIEL A. OLIVAS
                                             Senior Assistant Attorney General
20                                           DENNIS L. BECK, JR.
                                             Acting Senior Assistant Attorney General
21                                           VANESSA MORRISON
                                             Supervising Deputy Attorney General
22
                                              */s/ Elizabeth B. Rumsey*
23                                           ELIZABETH B. RUMSEY
                                             STACY LAU
24                                           AMAYA RAMSAY-MALONE
                                             Deputy Attorneys General
25                                           *The People of the State of California ex*
                                             *rel. Rob Bonta Attorney General of*
26                                           *California*

27

28