1   ROB BONTA
    Attorney General of California
2   DANIEL A. OLIVAS (SBN 130405)
    Senior Assistant Attorney General
3   DENNIS L. BECK, JR. (SBN 179492)
    Acting Senior Assistant Attorney General
4   DEBORAH M. SMITH (SBN 208960)
    VANESSA MORRISON (SBN 254002)
5   Supervising Deputy Attorneys General
    ELIZABETH B. RUMSEY (SBN 257908)
6   STACY LAU (SBN 254507)
    AMAYA RAMSAY-MALONE (SBN 357396)
7   Deputy Attorneys General
     1515 Clay Street, 20th Floor
8    P.O. Box 70550
     Oakland, CA  94612-0550
9    Telephone:  (510) 879-0860
     Fax:  (510) 622-2270
10   E-mail:  Deborah.Smith@ doj.ca.gov
             Vanessa.Morrison@doj.ca.gov
11           Liz.Rumsey@doj.ca.gov
    *Attorneys for Plaintiff*
12  *The People of the State of California ex rel. Rob*
    *Bonta Attorney General of California*

13                   IN THE UNITED STATES DISTRICT COURT

14                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                         SAN FRANCISCO DIVISION

16

17

| | |
|---|---|
| 18  **THE PEOPLE OF THE STATE OF CALIFORNIA, ex rel. ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA,** | 3:24-cv-07594-RGS |
| 19 | |
| 20                                   Plaintiff, | **DECLARATION OF ELIZABETH RUMSEY IN SUPPORT OF THE PEOPLE OF THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF REMAND ORDER** |
| 21           v. | |
| 22 | |
| 23  **EXXON MOBIL CORPORATION; AND DOES 1 THROUGH 100, INCLUSIVE,** | |
| 24                                 Defendants. | Date:        TBD<br>Time:       1:30 p.m.<br>Dept:       Courtroom 3, 17th Floor<br>Judge:      The Hon. Richard G. Seeborg |
| 25 | Trial Date:  TBD |
| 26 | Action Filed: September 23, 2024 |

27

28

I, Elizabeth Rumsey, declare and state as follows:

1. I am a Deputy Attorney General in the California Attorney General's Office. I am one of the attorneys assigned to represent Plaintiff the People of the State of California, ex rel. Rob Bonta, Attorney General of California, in the above-captioned matter. I am a member of the State Bar of California and am admitted to appear before this Court. I have personal knowledge of the facts set forth herein and, if called to testify, I would and could competently testify as set forth below.

2. The People filed this action against ExxonMobil and Does 1 through 100 on September 23, 2024. ExxonMobil removed the action to federal court on November 1, 2024. The People moved to remand the action to state court on December 9, 2024, and hearing on that motion was held on February 13, 2025.

3. In advance of the hearing on our remand motion, we contacted counsel for ExxonMobil, Down Sestito and Matthew Cowan, via email. A true and correct copy of these email communications is attached hereto as **Exhibit A**. We asked whether, in the event the court granted the People's motion for remand, ExxonMobil intended to appeal. If ExxonMobil did intend to appeal, we asked whether ExxonMobil intended to request a stay of the remand motion at hearing. *See* Exh. A, email of Feb. 11, 2025, 11:57 a.m., from D. Smith to D. Sestito.

4. Our primary concern with further delay of the litigation of this matter was (and remains) that certain third-party evidence may be destroyed or lost. We have communicated to ExxonMobil that there are several witnesses with potentially valuable knowledge of important facts who are elderly or ill, who we intend to depose. We have further communicated that we are concerned that these individuals may only be available for deposition for a finite period of time, if they are still available at all. Further, it has come to our attention that a number of sources of potentially valuable information, including social media and internet search platforms, are likely subject to the Federal Stored Communications Act. *See* 18 U.S.C. § 2701, *et seq*. Section 2703 of this Act appears to limit the time that social media entities can be required to preserve data to 180 days. 18 U.S.C. § 2703.

5.  In addition to the prospect of delay pending appeal of the remand order, it is also our understanding that, should the case be remanded, ExxonMobil intends to file several motions challenging jurisdiction as well as the sufficiency of the Complaint.

6.  In light of our concerns regarding potential loss of evidence, and the prospect of significant delay, we communicated to counsel (both in emails and ongoing phone discussions) that we would likely oppose any stay, but that we wished to explore whether the parties could come to a mutually agreeable solution regarding next steps in the litigation, that would, at the very least, allow us to pursue certain third-party discovery. *See* Exh. A, email of Feb. 11, 2025, 11:57 a.m., from D. Smith to D. Sestito. To allow additional time to continue these discussions after hearing, we agreed to jointly request a short administrative stay **(30 days)** of the remand order, should the court decide to issue one. *See id*., email of Feb. 13, 2025, 12:24 p.m., from D. Smith to D. Sestito.

7.  The Court imposed an administrative stay of 42 days that expires on April 7, 2025. This is a longer stay than we anticipated.

8.  Attached hereto as **Exhibit B** is a true and correct copy of a transcript of the February 13, 2025 proceedings before this court, on the People's remand motion

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed March 25, 2025, at San Francisco, California.

Elizabeth Rumsey

EXHIBIT A

| | |
|---|---|
| **From:** | Deborah Smith |
| **To:** | Sestito, Dawn; Cowan, Matthew R. |
| **Cc:** | Vanessa Morrison; Stacy J. Lau; Liz Rumsey; Amaya RamsayMalone; Hallie Kutak; Justin Lee |
| **Subject:** | RE: Meeting to discuss procedural issues |
| **Date:** | Thursday, February 13, 2025 12:23:37 PM |

Dawn,

We can agree with 30 days.  I assume that when you say that timeframe would, in part, "provide time to brief a motion to stay" that we would also meet and confer regarding a briefing schedule for such a motion.

Thank you,

Debbie

**From:** Sestito, Dawn <dsestito@omm.com>
**Sent:** Thursday, February 13, 2025 11:54 AM
**To:** Deborah Smith <Deborah.Smith@doj.ca.gov>; Cowan, Matthew R. <mcowan@omm.com>
**Cc:** Vanessa Morrison <Vanessa.Morrison@doj.ca.gov>; Stacy J. Lau <Stacy.Lau@doj.ca.gov>; Liz Rumsey <Liz.Rumsey@doj.ca.gov>; Amaya RamsayMalone <Amaya.RamsayMalone@doj.ca.gov>; Hallie Kutak <Hallie.Kutak@doj.ca.gov>; Justin Lee <Justin.Lee@doj.ca.gov>
**Subject:** RE: Meeting to discuss procedural issues

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Debbie – thank you for the call yesterday.  As I noted, we are always open to discussion about management of the case.  We discussed agreement to an administrative stay of the remand in the event the court grants the motion to remand so that the parties can at that time discuss next steps (and to provide time to brief a motion to stay if ExxonMobil decides to appeal and believes that a stay is warranted).  We propose a 30-day administrative stay. Let me know your thoughts on that.  And, of course, we'll also confer about next steps if the motion to remand is denied.

Best,
Dawn


**O'Melveny**

**Dawn Sestito**
dsestito@omm.com
O: +1-213-430-6352

O'Melveny & Myers
LLP
400 South Hope
Street, 18th Floor
Los Angeles, CA
90071

Website | LinkedIn |
Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Deborah Smith <Deborah.Smith@doj.ca.gov>
**Sent:** Tuesday, February 11, 2025 3:16 PM
**To:** Sestito, Dawn <dsestito@omm.com>; Cowan, Matthew R. <mcowan@omm.com>
**Cc:** Vanessa Morrison <Vanessa.Morrison@doj.ca.gov>; Stacy J. Lau <Stacy.Lau@doj.ca.gov>; Liz Rumsey <Liz.Rumsey@doj.ca.gov>; Amaya RamsayMalone <Amaya.RamsayMalone@doj.ca.gov>; Hallie Kutak <Hallie.Kutak@doj.ca.gov>; Justin Lee <Justin.Lee@doj.ca.gov>
**Subject:** RE: Meeting to discuss procedural issues

Dawn,

We are available tomorrow at 1:30.  Would you like to send a Zoom link?  You can just include me, Vanessa, Stacy, and Liz from the above cc's.

Thank you,

Debbie

---

**From:** Sestito, Dawn <dsestito@omm.com>
**Sent:** Tuesday, February 11, 2025 2:55 PM
**To:** Deborah Smith <Deborah.Smith@doj.ca.gov>; Cowan, Matthew R. <mcowan@omm.com>
**Cc:** Vanessa Morrison <Vanessa.Morrison@doj.ca.gov>; Stacy J. Lau <Stacy.Lau@doj.ca.gov>; Liz Rumsey <Liz.Rumsey@doj.ca.gov>; Amaya RamsayMalone <Amaya.RamsayMalone@doj.ca.gov>; Hallie Kutak <Hallie.Kutak@doj.ca.gov>; Justin Lee <Justin.Lee@doj.ca.gov>
**Subject:** RE: Meeting to discuss procedural issues

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Debbie,

Of course – happy to discuss.  I can talk later this afternoon (maybe 4:30 or so) or tomorrow afternoon (maybe 1:30/2 or later).  Let me know what is best for you.

Best,
Dawn

## O'Melveny

**Dawn Sestito**
dsestito@omm.com

O: +1-213-430-6352

O'Melveny & Myers
LLP
400 South Hope
Street, 18th Floor
Los Angeles, CA
90071
Website | LinkedIn |
Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

**From:** Deborah Smith <Deborah.Smith@doj.ca.gov>
**Sent:** Tuesday, February 11, 2025 11:57 AM
**To:** Sestito, Dawn <dsestito@omm.com>; Cowan, Matthew R. <mcowan@omm.com>
**Cc:** Vanessa Morrison <Vanessa.Morrison@doj.ca.gov>; Stacy J. Lau <Stacy.Lau@doj.ca.gov>; Liz Rumsey <Liz.Rumsey@doj.ca.gov>; Amaya RamsayMalone <Amaya.RamsayMalone@doj.ca.gov>; Hallie Kutak <Hallie.Kutak@doj.ca.gov>; Justin Lee <Justin.Lee@doj.ca.gov>
**Subject:** Meeting to discuss procedural issues

Dawn,

We would like to schedule a time prior to the motion to remand hearing on Thursday to discuss some procedural issues. For example, we would like to discuss whether, in the event that the state prevails on the motion to remand, ExxonMobil intends to appeal and request a stay at the hearing on Thursday. If so, the state would likely oppose a request for stay, but we would like to explore whether we can reach some kind of agreement instead.

We would also like to discuss the possibility of entering into a comprehensive stipulation regarding motions and discovery following a potential remand. We understand, as stated in the joint stipulation to extend time filed on November 6, 2024, that ExxonMobil intends to file an anti-SLAPP motion if this case is remanded to state court.

If you are amenable to meeting, please let us know some times that would work for you.

Thank you,

Debbie


CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the

communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD SEEBORG, CHIEF DISTRICT JUDGE


| | | |
|---|---|---|
| Sierra Club, Inc., et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | 3:24-cv-07288 |
| | ) | |
| Exxon Mobil Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |


REPORTER'S TRANSCRIPT OF MOTION TO REMAND

THURSDAY, FEBRUARY 13, 2025

2:31 P.M.

SAN FRANCISCO, CALIFORNIA


_____

Teresa B. Johnson, CVR-M-CM, RVR, RVR-M
U.S. District Court Reporter
250 East North Street, Room 3401
Greenville, SC 29601
California CSR License# 14765

Reporting remotely by video teleconference

```
                    APPEARANCES OF COUNSEL:


For Plaintiffs:

     Cotchett, Pitre & McCarthy LLP
     BY:  GRACE Y. PARK, ESQUIRE
          TYSON C. REDENBARGER, ESQUIRE
     840, Malcolm Road
     Burlingame, CA  94010
     Appearing in person


For Defendant:

     OMelveny and Myers LLP
     BY:  DAWN SESTITO
          JASON ZARROW
     400 South Hope Street
     LOS ANGELES, CA  90071
     Appearing in person




For Plaintiff The People of the State of California:

     California Office of the Attorney General
     BY:  HALLIE E. KUTAK
     300 S. Spring St 1700
     Los Angeles, CA  90013
     Appearing in person
```

<u>**P R O C E E D I N G S**</u>

1

2          (Proceedings commence on Thursday, the 13th

3          day of February 2025, at 2:31 p.m.)

4          THE COURTROOM DEPUTY:  Calling Case

5 24-cv-7288, Sierra Club versus ExxonMobil Corporation,

6 and related case 24-cv-7594, The People of the State of

7 California versus ExxonMobil Corporation.

8          Counsel, please come forward and state your

9 appearances.

10          MS. PARK:  Grace Park of Cotchett, Pitre &

11 McCarthy LLP representing Sierra Club, Surfrider

12 Foundation, Heal the Bay, and Baykeeper.

13          THE COURT:  Good afternoon.

14          MS. KUTAK:  Good afternoon, Your Honor.  My

15 name is Hallie Kutak from the California Department of

16 Justice here on behalf of the People of the State of

17 California.

18          THE COURT:  Good afternoon.

19          THE COURT REPORTER:  Excuse me.

20          THE COURTROOM DEPUTY:  Oh, she's having

21 issues.

22          THE COURT REPORTER:  Excuse me.  This is the

23 court reporter.  I apologize.

24          THE COURTROOM DEPUTY:  Teresa, what's the

25 matter?

```
1              THE COURT REPORTER:  They sound very muffled.

2              THE COURTROOM DEPUTY:  I can't hear you.

3              THE COURT REPORTER:  They sound very muffled

4   at the microphone.  They're too close to the microphone.

5              THE COURT:  Our court reporter is virtual.

6              THE COURTROOM DEPUTY:  Can you hear the Judge?

7   Okay.

8              I think she doesn't want you too close to the

9   mic maybe?

10             MS. SESTITO:  Okay.  Is this okay?

11             THE COURT:  Yes.  Go ahead.

12             MS. SESTITO:  Is this okay?

13             THE COURT:  Yes.

14             MS. SESTITO:  Okay.

15             THE COURT:  Go ahead.

16             MS. SESTITO:  Good afternoon.  Dawn Sestito of

17  OMelveny and Myers.  I'm here for Defendant ExxonMobil

18  Corporation.  With me at counsel table is Jason Zarrow.

19             THE COURT:  Very good.  Good afternoon.

20             So this matter is on for motions by the

21  plaintiff to remand both the case brought by the State

22  of California and by various nonprofit groups.  I'll

23  offer you some tentative views so that you can focus

24  your arguments for me.

25             With respect to the California case, I don't
```

1  think there is any real -- really realistic basis to

2  argue either federal enclave or federal officer

3  jurisdiction that would be applicable here, there being

4  no independent basis for federal jurisdiction on savings

5  to suitors clause, Constitution clause.  I even don't

6  think there's any maritime jurisdiction is properly

7  involved here.

8        Even were we just to look at this from the

9  maritime -- the jurisdiction perspective, I -- I also

10  don't think it's -- that would be supported standing

11  alone, as I really don't think the (indiscernible) in

12  the -- in the complaint bear a substantial relationship

13  to traditional maritime activity.

14        Although I -- I think that the California

15  state case is subject to remand, that does move us with

16  what to do with the nonprofit entities case, which it

17  does appear there is complete diversity.  So that throws

18  us into the realm of applicability under section -- or

19  to a lesser extent the Colorado River Doc.  So I -- I

20  do want to hear about that and see where we go -- go

21  from here.

22        So that being the -- my tentative view, I -- I

23  will not certainly preclude the defendants from arguing

24  about the California state case, but I -- I really don't

25  think that the -- the bases for fighting the remand of

1   that case are -- are very viable.  And I have to say,

2   of -- of the arguments you made, the federal officer

3   argument, I think, verges on the absurd, quite frankly.

4           All right.  So that said, because you're going

5   to be arguing both, why don't I have the defense come

6   up?  As I say, I won't preclude discussion of the

7   California state case, but keep in mind I have a pretty

8   strong tentative on that.  So I really want to spend

9   most of our time focused on the nonprofits' case, and

10  what -- what to do it, frankly.

11          MS. SESTITO:  Okay.  Understood, Your Honor.

12  I'll start by saying if -- if Your Honor (indiscernible)

13  the attorney general case, there's absolutely nothing

14  unusual about having cases that are related and parallel

15  that proceed in state and federal court.  And so I want

16  to -- want to address that thoroughly with *Younger*

17  abstention issues.  I do want to say a couple of things

18  quickly, though, about the state case, keeping in mind

19  your comments.

20          So our -- our remand motion was focused on the

21  allegations of the complaint.  And I want to start with

22  maritime.  Your Honor mentioned savings to suitors.

23  That was not a ground that was raised in the motion to

24  remand.  It has -- it is believable and -- and we

25  believe has been waived.  And if you give me just a

1    moment, I will give you -- there's Ninth

2    Circuit authority --

3         THE COURT:  Did you argue the waiver point in

4    your papers?

5         MS. SESTITO:  No, because they had not waived

6    it.  So there was no basis for us to address the savings

7    to suitor clause.  So it was raised for the first --

8         THE COURT:  Is it my obligation to -- it's

9    jurisdiction question?  I mean, don't I have to make a

10   determination on whether or not there's proper

11   jurisdiction?

12        MS. SESTITO:  Absolutely.  But the savings to

13   suitor clause is not -- doesn't divest the court of

14   jurisdiction.  It's waivable.  And the case is *Morris*

15   *versus Princess Cruises*.  The site is 236 F.3d 1061,

16   1069.  That's a Ninth Circuit case from 2001.  And it

17   says that a "state plaintiff may waive the improper

18   removal under a savings to suitor clause claim."  And

19   the idea is that the plaintiff has the option in a

20   maritime case of filing in state court or in federal

21   court.

22        The savings to suitors clause typically would

23   bar removal, but it's waivable.  And here the plaintiffs

24   waived it in two ways, actually.  So one is that they

25   didn't raise it in their opening motion to remand.  But

1    as a procedural defect, those typically have to be

2    raised within 30 days of removal.  And in this case,

3    that also was not done.  It was not raised within 30

4    days of removal.  So the savings to suitor clause does

5    not divest the Court of jurisdictional under *Morris*.

6    It's, instead, a waivable procedural defect in the

7    removal.

8            THE COURT:  Assuming for a moment that waiver

9    isn't applicable for whatever reason, if they -- if you

10   didn't have waiver as your argument, why would -- why

11   would you be able to fight the remand with respect to

12   the issue of the savings to suitor clause?

13           MS. SESTITO:  That was addressed.  There's two

14   issues that were reserved in the *San Mateo* case, Your

15   Honor, by the Ninth Circuit --

16           THE COURT:  Well, I'm not sure they were

17   reserved, but okay.

18           MS. SESTITO:  But they were left open.

19           And if this argument had been raised in the

20   motion to remand, we would have briefed them in our

21   opposition.  It wasn't, so we didn't have that

22   opportunity.  So I can talk about it.  I would say that

23   if Your Honor is going to rely on the savings to

24   suitors, we think it would be appropriate to have

25   briefing on the issue of both waiver and whether or not

1    these other kind of key issues that were reserved or at

2    least identified by the Ninth Circuit in the *San Mateo*

3    case.

4            THE COURT:  Okay.  Well, let's -- let's put

5    that one aside.  And let's -- let's go back first.

6    Let's start with maritime jurisdiction standing alone.

7            MS. SESTITO:  Sure.

8            THE COURT:  Okay.

9            MS. SESTITO:  So location.  Did the tort occur

10   in navigable water?  I want to be clear what navigable

11   water is.  That's waters that form a highway or ways of

12   transportation in which commerce can be conducted with

13   other states or countries.  So that includes a lot of

14   ground in the state of California within the state's

15   geographical boundaries.  We identified cases, the

16   Sacramento River, the --

17           THE COURT:  It is a process of if you can find

18   something in there, some small enclave in the state, all

19   you say is, "There must be some enclaves in the state,"

20   that's -- that's not enough to say this is maritime

21   jurisdiction.

22           MS. SESTITO:  Well, maritime is distinct, Your

23   Honor, from the enclave issue.  So maritime -- the

24   navigable waters, I -- I would submit that their

25   complaint is primarily involving navigable waters, and

```
 1   that's because their complaint focuses a lot on the

 2   coastline and beaches.  It's undisputed that the ocean,

 3   including the ocean that abuts the coastline, is

 4   navigable waters.  And so all of that water along an

 5   entire coastline --

 6            THE COURT:  I think that's a complete stretch.

 7   I really do.  This isn't a maritime case.  We have a lot

 8   of maritime cases here, admiralty cases.  This isn't

 9   a -- that's a complete stretch, I think.

10            MS. SESTITO:  Well, I think looking at the

11   elements, the tort arises on the -- on navigable waters.

12   The second element is whether there's impact -- or

13   potentially disruptive impact of the maritime commerce.

14            THE COURT:  You know, I admire you and the

15   creativity of your arguments, but -- and I -- I respect

16   your right to make that argument.  But I -- really,

17   that's all flushed out in the papers.  And I -- I'm

18   going there.  So I don't want to impose on your time

19   needlessly, so let's move on to a different area.

20            MS. SESTITO:  All right.

21            THE COURT:  The federal enclave issue --

22            MS. SESTITO:  Uh-huh.

23            THE COURT:  -- and again, on the federal

24   officer issue, you've submitted a lot of paper to me.  I

25   don't buy it, so let's not spend any time on that.
```

1          MS. SESTITO:  Okay.

2          THE COURT:  But the -- the -- you know,

3    (indiscernible) to Exxon doing double production isn't

4    gonna fly.  So what -- why don't you talk to me a little

5    about the federal enclave jurisdiction?

6          MS. SESTITO:  Sure.  So federal enclaves are

7    distinct from maritime.  And they have to do with

8    federal -- there are certain definitions for federal

9    enclaves and whether the injury occurs or the conduct

10   issue occurs on that federal enclave.  And here, I don't

11   think there's any dispute that there is at least some

12   injury that has occurred on federal enclave.

13         THE COURT:  Is that all you need, though?

14   Some -- you'll find -- in state of California, you'll

15   find some piece of federal enclave.  And you say, all we

16   need to do is find just some, you know, piece of the

17   Presidio.  And therefore, then we're -- you know, we got

18   federal enclave jurisdiction.

19         MS. SESTITO:  Well, the issue, Your Honor, is

20   that if the injury occurs on the federal enclave, it's

21   actually governed by federal law.  And so that what --

22   that's what provides the basis for removal.  And so I do

23   think that if there is an injury that occurs on a

24   federal enclave that that provides removal jurisdiction.

25         There are cases that specifically say that it

1    doesn't have to be, you know, the (indiscernible)

2    argument, like the *Bell* case, which involved asbestos.

3    They didn't find that all of the asbestos exposure

4    occurred on federal enclaves.  They found that it was on

5    some of the federal enclave -- that -- that some of the

6    (indiscernible) at issue were federal enclaves.  So

7    there's not a requirement that the entirety of the

8    location has to be a federal enclave.

9            And in this case, remember, the effect of what

10   is alleged in the case --

11           THE COURT:  Have they disclaimed it, federal

12   enclave?

13           MS. SESTITO:  Well, I mean, they disclaim

14   federal -- looking at the specific footnote, they

15   disclaim on federal lands.

16           THE COURT:  Right.  They're the masters of

17   their complaint, and they are disclaiming.  So you're

18   saying, "Oh.  Well, they are going to say that they're

19   -- that they're disclaiming any federal enclave because

20   we can find some in the state of California that doesn't

21   work for them."  And I don't see why they can't

22   disclaim.

23           MS. SESTITO:  But they went on then to include

24   allegations that, I think, do include federal enclaves.

25   And there's extensive allegations about conduct and

1  impacts and injuries across the entirety of the state or

2  across the entirety of the globe.

3  　　　　THE COURT:  And then they -- and to the extent

4  they've done that, they've then carved out any federal

5  enclave.  So you know, what more could they say?

6  　　　　MS. SESTITO:  Well, I -- I think that -- I

7  guess what I would say is it's not clear to us when they

8  are making specific allegations about federal enclaves

9  in the context of the complaint that they're simply not

10  going to be part of the relief that they are seeking,

11  part of the injury that they're seeking.  And when their

12  allegation is when the complaint --

13  　　　　THE COURT:  You -- you would perfectly

14  entitled to say, "Look, they disclaimed it."  If they --

15  if they try to pull a stunt like that on you, then you

16  can say, "Well, we've got this disclaimer, so they

17  can't -- they can't recover for any injury on federal

18  property."

19  　　　　MS. SESTITO:  And as an example, Your Honor,

20  in paragraph 360, they specifically referenced the

21  Monterrey Bay National Marine Sanctuary, which they seem

22  to agree is a federal enclave.  It's not clear, though,

23  that they're carve out of federal (indiscernible)

24  applies to a marine sanctuary, which is waters, but

25  they're the ones who allege that specific harm in

1   paragraph 360.

2            They identify in paragraph 100 and -- or they

3   say that there's 105 water bodies within the state that

4   have been impacted.  And so in light of those

5   allegations, it -- I -- I don't think it's as clear that

6   this footnote can just disclaim it, that they can bring

7   a claim that is asserting injury essentially across the

8   entirety of the state.  They can hold a single company

9   responsible for all of global plastic pollution.

10           THE COURT:  That doesn't mean they'll prevail

11  on the claim.  I mean, I'm not -- this is -- we're just

12  talking about the right to get the jurisdiction

13  question.

14           MS. SESTITO:  Sure.

15           THE COURT:  Your argument would be much

16  stronger if we were -- if they were bringing a claim to

17  cover a geographic area that is dominated by federal

18  enclaves.  And -- and you say, well, there's no --

19  there's no way they could perceive their -- their whole

20  theory here is really going after things that even with

21  a disclaimer, it doesn't make any sense because there's

22  so much federal enclave territory.  We're talking to the

23  state of California.  It's got a lot of nonfederal

24  enclaves.

25           So their complaint isn't -- isn't, you know,

1  subject to a problem right out of the box because of the

2  nature of the area that they're purporting to cover.  So

3  that's why I don't see why the disclaimer doesn't

4  provide you the protection that you need.

5          MS. SESTITO:  Yeah.  I mean, I think our goal

6  is that there's -- that the allegations are so broad in

7  terms of the conduct within the state of California and

8  the lands that are covered, but also a specific

9  reference to the Monterrey National Marine Sanctuary,

10  which is not -- it's not clear to me, for example, that

11  that footnote -- the footnote doesn't address enclaves;

12  it addresses federal land -- that those things are

13  necessarily co-extensive, and it applies to that

14  particular marine sanctuary.  So then there's a specific

15  allegation about it.

16          It seems like that's part of what they're

17  suing for.  And they're asking -- just to be clear,

18  right, there's a public nuisance claim.  There's a water

19  pollution claim.  They're asking -- it appears that they

20  will be asking for ExxonMobil to go in an actually

21  remove plastic pollution from across the state, anything

22  within the geographic boundaries of the state of

23  California.

24          THE COURT:  And I presume you would say if it

25  got to that point, well, marine (indiscernible) is

1    federal enclave.

2         MS. SESTITO:  Well, I mean, as I said, it's

3    not clear that there's bar disclaimers (indiscernible)

4    federal enclave as opposed to federal land.

5         THE COURT:  Let me ask the -- your counterpart

6    from the state on the waiver issue, and then perhaps

7    also if you want to respond to some of the other points.

8    But in particular, what's your response on the saving --

9    savings to suitors clause waiver issue?

10        MS. KUTAK:  Your Honor, I have not read the

11   case that ExxonMobil offered the citation --

12        THE COURT:  The first case that they

13   mentioned?

14        MS. KUTAK:  Yes.

15        But in responding to ExxonMobil's claim in

16   their opposition that jurisdiction on any one of those

17   bases would entitle them to supplemental jurisdiction on

18   a remand, and that's simply not true for maritime

19   jurisdiction.

20   And even so, I think --

21        THE COURT:  So that -- you're saying they just

22   don't have the basis to -- to base their claim on

23   maritime jurisdiction.  That's standing alone, right?

24        MS. KUTAK:  Right.

25        THE COURT:  But you're also making the

1    argument that they need an underlying alternative

2    federal basis for jurisdiction because of the savings to

3    suitor clause.

4            MS. KUTAK:  Correct.

5            THE COURT:  And they're saying to me, well,

6    they waived that argument.  And then they cite this

7    *Morris* case.  So that's the issue I was looking for you

8    to respond to.

9            MS. KUTAK:  I see.  The savings to suitors

10   clause is found on separate basis of jurisdiction that

11   we could waive by not opposing.  We were responding to

12   ExxonMobil's claim in their papers that any ground for

13   jurisdiction that they raised would (indiscernible) to

14   supplemental jurisdiction of the rest of claims.  And --

15   and that's not true for maritime jurisdiction.  Right?

16   If they brought -- if maritime jurisdiction were the

17   only ground that they could show applied, they still

18   would have to stay in state court.  They would not get

19   supplemental jurisdiction over the other claims.

20            And that aside, I think under the maritime

21   jurisdiction, I don't think this case is a maritime

22   case.  It certainly does not have maritime flavor.

23   ExxonMobil has not explained by the activity giving rise

24   to the complaint -- mainly the deception on recycling

25   has any relationship -- -- more or less a substantial

```
 1   relationship to traditional maritime activities such

 2   that it would make sense for the court to

 3   apply admiralty law to this case.

 4           THE COURT:  Okay.  Back to -- back to you.

 5           MS. SESTITO:  Yes, I just -- I know you don't

 6   want to hear about federal officer.  I just want to make

 7   one point for the record, which is just, again, that the

 8   scope of the relief that the state is seeking is

 9   breathtaking, in terms of seeking a cleanup of plastic

10   by a single company across -- within the entire

11   geographical boundaries --

12           THE COURT:  Oh, I --

13           MS. SESTITO:  -- of the state --

14           THE COURT:  I --

15           MS. SESTITO:  -- of California.

16           THE COURT:  I understand that's your position,

17   but is that -- is this the day to that argue that?  I

18   mean, we're really talking about where -- in what court

19   these claims go forward, not whether or not, you know,

20   these -- just what you said, these claims are way out

21   there or not.  I mean, that's for another day.

22           MS. SESTITO:  Yes.  I understand that.  The

23   point I'm trying to make is that given the breadth and

24   scope and their claim to a lot of conduct that's many

25   decades old, they're claiming that plastics last for a
```

1   very long time and may take decades or hundreds of years

2   for them to break down.  That is why we tied in the

3   federal officer.  Because if there is plastic or plastic

4   products that were made at the direction of federal

5   officer, and we're now going to be -- they're seeking to

6   hold us responsible --

7           THE COURT:  But their -- they're so much more

8   specific about microplastics, but it's not about rubber.

9   And in your argument -- I mean, I don't particularly

10  want to get too deeply into it --

11          MS. SESTITO:  Sure.

12          THE COURT:  -- because frankly, I think that

13  one pushes the envelope a bit.  The fact that Exxon was

14  involved in rubber production during World War II is not

15  a basis to say you've got federal officer jurisdiction

16  now in a case that involves microplastic pollution quite

17  specifically alleged against your client.  You -- it

18  just -- it doesn't -- it's not -- it's not your

19  strongest argument.  Let me put it that way.

20          MS. SESTITO:  Understood, Your Honor.  Well,

21  we'll make those arguments later in terms of the scope

22  of abatement, yes.

23          THE COURT:  All right.  So I think now let's

24  shift to -- assuming for a moment -- and I will go back

25  and look at this waiver point in *Morris* case.  And I may

 1    ask for briefing as you suggest.  Let me take a look at
 2    that.  But for -- for purposes of our discussion today,
 3    let -- let us assume we are in a world where the
 4    California -- State of California case has gone back to
 5    state court, and now we have the nonprofits case.  And
 6    the argument that I'm hearing from the nonprofit
 7    plaintiffs is you should apply *Younger* abstention, or
 8    alternatively, you should -- if you don't think *Younger*
 9    abstention works here, then go with *Colorado River* Doc.
10         Okay.  So let's talk about that.  So seeing
11    that you're up here --
12         MS. KUTAK:  Your Honor --
13         THE COURT:  Yes.
14         MS. KUTAK:  -- may I be heard on part of the
15    maritime jurisdiction?
16         THE COURT:  Yes.  Go ahead.
17         MS. KUTAK:  Thank you.
18         I -- I understand that the court is going to
19    consider additional briefing.  I think that briefing --
20         THE COURT:  Well, I don't know yet.  Let me go
21    back and look, and I'll tell you if I want additional
22    briefing.
23         MS. KUTAK:  Of course.  I think that
24    additional briefing would only be helpful proving
25    maritime jurisdiction applied here.  Otherwise, it would

```
 1    be this exercise -- we argued maritime jurisdiction on

 2    the merits.  ExxonMobil did not show that there is a

 3    nexus to traditional maritime --

 4              THE COURT:  I -- I understand that's the

 5    alternative argument.

 6              MS. KUTAK:  Yes.  And I wouldn't want

 7    additional briefing to become an opportunity for a

 8    second bite at the apple to --

 9              THE COURT:  I -- I hear you.

10              MS. KUTAK:  Thank you.

11              THE COURT:  Okay.  So let's have the

12    nonprofits side come on up.

13              So on the question of Young abstention and

14    Colorado River.

15              MS. SESTITO:  Yes.  So Your Honor, they're not

16    really seeking abstention.  Like what they want is to go

17    back to the forum where they originally filed the case

18    in state court.

19              THE COURT:  Right.

20              MS. SESTITO:  They don't want the case to be

21    paused.  They don't want it to be stayed.  They don't

22    want it to be dismissed.  And there's no authority they

23    could find that would allow them to use either of these

24    abstention doctrines to end run our right to remove this

25    case.  And there's no dispute --
```

```
1            THE COURT:  If that's true, let's say -- you

2    know, the scenario would be --

3            MS. SESTITO:  Uh-huh.

4            THE COURT:  -- as I understand it, if I have

5    the chronology right, the state of California case was

6    pending in state court when the nonprofits came into

7    state court.  And if, in fact, the state of California

8    case is remanded to state court -- remanded to state

9    court --

10           MS. SESTITO:  Uh-huh.

11           THE COURT:  I think the other -- other factors

12   that it's -- this is not a criminal case.  But it's

13   got -- it's a civil case with some criminal analog.  And

14   I think -- I mean, we can argue whether or not the

15   Younger factors are met.  But if the Younger factors are

16   met, there would -- there would be a basis to remand it

17   under the Younger doctrine.

18           MS. SESTITO:  Well, I actually think the

19   parties are wrong in this case.  So Younger -- like the

20   Younger case itself involved a state criminal defendant.

21   So he's been prosecuted for a crime.  He had -- he

22   believed the statute he was being prosecuted for was

23   unconstitutional.  Instead of raising those federal

24   defenses in the criminal prosecution, he filed a

25   separate federal case.  So he was the state court
```

1   defendant and a federal court plaintiff.  And the Court

2   said that that was not allowed.  He was seeking to

3   enjoin the state case in filing his federal case.

4           ExxonMobil is not seeking to enjoin anything.

5   We're just removing, as we're permitted to do under the

6   statute.  We didn't initiate either of these cases.

7   This isn't an attack in any way on it.  We're just

8   trying into the federal forum that the US Code provides

9   for us in a case like this.

10          And if you look at the cases, they say that --

11  they refer to this party issue and specifically say

12  *Younger* abstention ordinarily does not apply when the

13  federal plaintiff is also the plaintiff in state court.

14  That's 255 F.3d at 1098, Ninth Circuit en banc from

15  2001.  So if we're talking about the flavor, right, a

16  flavor is a state court defendant --

17          THE COURT:  I -- I don't agree with you.  I --

18  I don't think that's -- *Younger* factors are not the

19  positioning of who's the plaintiff, who's the defendant

20  that you seem to suggest *Younger* says.  *Younger* and

21  the -- the factors that you apply in *Younger* are the

22  nature of the case factors.  They may have -- federal

23  courts may have stated when a case involves parallel

24  pending state criminal proceedings, or state civil

25  proceedings that are akin to criminal prosecutions,

1    which I think arguably is true here, or state civil

2    proceedings that indicate a state's interest in

3    enforcing the orders and the judgments of its courts.

4    That's *Younger* abstention.  Those are the factors of

5    *Younger* abstention.  It's not the positioning of who's

6    plaintiff and who's defendant in which forum.

7          MS. SESTITO:  But it's also that the federal

8    court actually has to seek to enjoin or have the

9    practical effect of enjoining beyond going to state

10   proceedings.  And that's -- that's -- that's where --

11         THE COURT:  Well, it has to implicate a

12   state's interest in enforcing orders and judgments of

13   its courts.

14         MS. SESTITO:  Well, I think the courts are

15   saying it in different -- there's several of the courts,

16   including *Green* and *Herrera*, that address it as needing

17   to either actually enjoin, be an actual suit to bring an

18   injunction to stop the federal court proceeding,

19   declaratory relief, or in some other way interfere.

20   There has to be interference with the state court

21   action.

22         And in all of these cases, that was the --

23   that was the intent.  That was the purpose of doing it.

24   In *Herrera*, that's --

25         THE COURT:  Would that be the case here if --

1   if the state case goes forward in state court and then

2   the nonprofit case was here, then what is the risk of

3   conflicting judgments and interference with the state

4   court proceedings?

5         MS. SESTITO:  But that's inherent in any case

6   where there are similar issues being decided in federal

7   court and state court.  And the Supreme Court has

8   rejected that.

9         And I'll cite from the *Roden* decision, a Ninth

10  Circuit, 2007 case, 495 F.3d at 1151.  The Supreme Court

11  has rejected the notion that federal court should

12  abstain whenever a suit involves claims or issues

13  simultaneously being mandated in state court merely

14  because whichever court rules first move via the

15  doctrines of res judicata and collateral estoppel

16  preclude the other from deciding that claim or issue.

17  So that is just not enough under *Younger*, Your Honor.

18         We don't have the critical interference, the

19  ingenuity, the practical effect of enjoining the ongoing

20  state court proceedings.  And in this case, it's

21  particularly inappropriate to apply it.  Because

22  ExxonMobil isn't trying to enjoin a state's lawsuit.

23         We -- we got served -- they filed the lawsuits

24  on the same day.  Actually, the Sierra Club case was

25  filed first in state court, not second.  But they were

1    filed the same day.  And ExxonMobil is just seeking to

2    defend itself.  And it has a right to remove.  The court

3    has a virtually unflagging obligation to hear cases that

4    are proper in federal court, as this one is.  And if you

5    allow the nonprofits to --

6             THE COURT:  Let me ask you this question.

7    Let's just be practical for a moment.

8             MS. SESTITO:  Uh-huh.

9             THE COURT:  Does it make a lot of sense for --

10   as I -- as I understand it, effectively, the nonprofit

11   claims, they're not as -- as extensive, I guess, as the

12   state court claims -- the state case claims, but

13   they're -- they're -- they overlap almost entirely.  I

14   don't think the nonprofit -- they have, I think -- they

15   have both nuisance claims -- and I forget the other

16   claim for relief.  But does it make sense to have the

17   state court -- and this is -- again, assumes that I'm --

18   I bought the idea that this -- the state case goes back

19   to the -- to the Superior Court.  Does it make sense for

20   this case to stay here and that case to stay there?  And

21   we go about our merry way in a case like this?

22   Shouldn't this be one place?

23             You might want it to be in federal court, is

24   your answer to that.  But assuming it can't be in

25   federal court and the state case, doesn't it just make

 1   sense for it to be all in one place?

 2           MS. SESTITO:  I don't think the court can

 3   remand it just because it makes --

 4           THE COURT:  No.  I'm just asking a question.

 5   Does it -- don't you think there are problems associated

 6   with having these parallel proceedings in a case of this

 7   type?

 8           MS. SESTITO:  I think there are many, many

 9   cases that are pending right now in this court, either

10   are similar or parallel to state --

11           THE COURT:  I'm assuming that that's probably

12   not an optimal situation.

13           MS. SESTITO:  Right.  But it happens all the

14   time.  And that -- that can't be sufficient to send

15   cases that have proper federal court jurisdiction, that

16   were properly removed, that have diversity

17   jurisdiction -- there's a reason why Congress provided

18   removal jurisdiction for diverse parties.  And the Court

19   can't just walk away from that and decide that it would

20   be more efficient or -- or -- or more -- that the issue

21   should be decided together.  Because what that would --

22   I -- there have been a substantial number of cases in

23   this court that might no longer be pending here, if the

24   court had the ability to just --

25           THE COURT:  Okay.  All right.

1          MS. SESTITO:  But do just want to say one

2     thing, Your Honor, which is that they permitted us to go

3     forward -- remanding the Sierra Club case, would

4     essentially allow them to end run around these

5     jurisdictional laws and end run around federal court

6     jurisdiction and our right, frankly, to have this case

7     removed and heard in a federal forum.

8          And the fact that they, you know, talked to

9     the California Attorney General and, you know, filed

10    their lawsuits on the same day, they can't be the ones

11    that divest a federal court of jurisdiction based on

12    this kind -- that kind of gamesmanship.  And there's no

13    case -- we don't find a single case that would allow

14    their actions in that way to divest a defendant of their

15    right to have their case heard in federal court.

16          THE COURT:  Okay.  Ms. Park, go ahead.

17          MS. PARK:  I think it would be helpful just to

18    walk through the *Younger* factors and to then talk about

19    removing.  With respect to the *Younger* factors, there is

20    a threshold question.  And that threshold question was,

21    Is this the type of case where *Younger* abstention would

22    apply?  And those are what we (indiscernible) for

23    criminal cases, quasi criminal action tables, with

24    respect to judicial enforcement.  This is a quasi

25    criminal action Huffman Pursue, 420 U.S. 582, Citizens

1   for Free -- Free Press, 933 F.3d 655, Cabrera versus

2   City of (indiscernible) --

3           THE COURT REPORTER:  Your Honor, this is the

4   court -- this --

5           MS. PARK:  -- (indiscernible) this is

6   precise -- nuisance is precisely quasi criminal

7   enforcement action.  So is the (indiscernible).

8           THE COURT REPORTER:  Excuse me --

9           [Court reporter's microphone is not projecting

10          into the open courtroom.]

11          THE COURT:  If I find *Younger* abstention is

12  applicable, the answer is to remand?

13          MS. PARK:  The answer, yes, is to remand.

14          THE COURT:  You have some cases for me where

15  having found *Younger* applicable, the -- the remedy is to

16  do remand to state court as opposed to stay or dismiss?

17          MS. PARK:  Yes.  So in *Quackenbush v.*

18  *Allstate*, the Court held -- the Supreme Court held that

19  federal courts have the power to dismiss or remand to

20  the extent plaintiff's claims are equitable.

21          THE COURT:  Under *Younger*?

22          MS. PARK:  Under *Younger* -- or under

23  abstention doctrines in general.  And *Gilbertson versus*

24  *Albright* confirmed that.  Because while Quackenbush was

25  a *Burford* abstention -- I don't know if I'm saying it

1    right -- but under *Gilbertson versus Albright*, that was

2    similar, another case.

3            The other thing is that -- the other case I'd

4    like to refer you to is *Trudy Christiansen versus*

5    *McVeigh*.  The pin cite on that is 2013 Westlaw 5835562.

6    And in this case, the Central District of California

7    said that the court is not categorically barred for

8    remanding damages action in Colorado River and has cited

9    *Quackenbush* for saying that to the extent that there's

10   money damages, maybe the better course of action is to

11   stay.  But in R and R Sweat [phonetic], Ninth Circuit

12   case, that case was dismissed even though it was a money

13   damages action.

14           THE COURT:  Just -- just so I address it, I

15   know state law makers *Colorado River* doctrine

16   alternative argument.  But as far as I can find, there

17   is no case that is remanded under the *Colorado River*

18   doctrine.

19           MS. PARK:  There is.  It's (indiscernible)

20   versus City of Oakland, 2007 Westlaw 6272.  And this is

21   a Northern District of California --

22           THE COURT:  So is there any circuit authority

23   that says you can remand using Colorado River doctrine?

24           MS. PARK:  There is no circuit authority, but

25   in this case, the Court did remand a 1983 claim which is

```
1    a  constitutional claim based with the component.
2            THE COURT:  Colorado River?
3            MS. PARK:  Correct.
4            THE COURT:  But that's it.
5            MS. PARK:  But -- but fundamentally here, it
6    is -- the nonprofits are asserting a public nuisance
7    claim under nuisance abatement in that they
8    (indiscernible).  So it does fall squarely within
9    Quackenbush in the sense that it is seeking equitable
10   relief.  (indiscernible).  And I think -- I also what's
11   important to know is that with respect to Gilbertson and
12   Albright, they did determine to stay their action given
13   that there was (indiscernible) understanding that the
14   state court did not have the ability to provide damages
15   under the (indiscernible) considering the constitutional
16   issue.  Here (indiscernible) possibly exist are the
17   damages under public nuisance which is a state court
18   claim that the state can alert.  And so I think that is
19   a distinction.
20           THE COURT:  What's -- what's your response to
21   your counterpart's argument that, you know, your case
22   plainly -- you had jurisdiction over your case because
23   you've got diversity in CAFA.  Well, they argue it's
24   tantamount to a class action, and we don't have to get
25   into all that right now.
```

1          MS. PARK:  Uh-huh.

2          THE COURT:  But under diversity, there's

3    jurisdiction.  So why shouldn't the tail cases just

4    proceed along.  Why -- why should we say -- do something

5    which you say it's not -- it's not unprecedented, but

6    it's certainly not a very prevalent way to proceed.  To

7    say, oh, *Younger* abstention, I'm remanding -- or

8    Colorado River.  Why shouldn't we just have cases go

9    forward?  Because, as counsel says, there are certainly

10   a lot of circumstances in which we've got issues being

11   litigated in the state court the same time they're being

12   litigated in the federal court.  Why not?

13         MS. PARK:  The *Younger* -- the *Younger*

14   abstention factors do apply here.  And I -- I wanted

15   much --

16         THE COURT:  Well, what I'm saying is -- well,

17   let's say is the answer to -- let's -- let's assume for

18   a moment that I agree with you.

19         MS. PARK:  Uh-huh.

20         THE COURT:  That doesn't automatically mean I

21   remand.  I can do any number of things if I find *Younger*

22   applies, one of which, we better stay the case, or

23   possibly dismiss the case.  Why shouldn't I take one of

24   those options?

25         MS. PARK:  Because fundamentally *Younger* is

```
1   about quality and federalism.  And ExxonMobil is clear

2   that they're just (indiscernible) by asserting a First

3   Amendment claim for relief, which they said that they

4   weren't going to do in -- in opposition.  Federal

5   (indiscernible), the federal contractor (indiscernible)

6   squarely claims for relief that they're seeking by

7   initiating removal into federal court, assumed the

8   federal claims for relief to enjoin the state court

9   action, which is the state court (indiscernible).  And

10  the authority for that is, with respect to the first

11  amendment charge, Gilbertson v. Albright, 381 F.3d 965.

12            THE COURT REPORTER:  I apologize.  Excuse me.

13            MS. PARK:  And with respect --

14            THE COURT REPORTER:  This is --

15            [Court reporter's microphone is not projecting

16            into the open courtroom.]

17            MS. PARK:  -- to the --

18            THE COURT:  Ma'am, I'm not sure that you're

19  answering -- now you're talking about comity, the cite

20  for California case seems to encompass your case, which

21  seems a bit (indiscernible) -- let's assume that the

22  aspect of your case is not effectively covered by the

23  State of California case.  So how does it offend the

24  state court -- comity in the state court if we send back

25  the California state court case -- State of California
```

1    case to the state court and then stay this one?  Why

2    not?

3              I mean, I understand you want (indiscernible)

4    to nonprofits and you want your case to proceed.  But in

5    terms of the comity issue, it doesn't create any

6    problem.  Respecting the state court, the state court's

7    going forward.

8              MS. PARK:  Uh-huh.

9              THE COURT:  Why not?

10             MS. PARK:  Again, I believe that Plaintiff, as

11   for the complaint, they initiated the case in state

12   court.

13   ExxonMobil moved on the diversity, but the rule does

14   apply.  And the actions that they are seeking, the

15   federal claims for relief that they are seeking from a

16   federal court is the very type of things that -- that

17   (indiscernible).

18             And I -- I don't -- I think I do understand

19   what you say.  And again, I think *Gilbertson v. Albright*

20   says -- says why you some remand it to state court,

21   which is when there is federal claims for relief -- or

22   federal relief being sought, in order to enjoin state

23   cause -- state court -- state causes of action, it

24   should be the state court that should assess whether or

25   not that their laws are being are -- are -- are within

1    the bounds of the Constitution protection.

2            THE COURT:  But that's right about the State

3    of California's case, but it's not true about your case,

4    particularly.  You're not -- you're -- you're here

5    because there's diversity jurisdiction.  You're not

6    invoking federal claims to defeat the prospect of having

7    this go forward in state court with respect to your

8    case.

9            MS. PARK:  And -- and I think this is why

10   the -- where the discussion about having a federal

11   plaintiff can't be a state court plaintiff, I think

12   that's kind of where that applies here, is that the --

13   the question, again, is whether there is -- whether the

14   case offends comity or federalism.  And if the state

15   court plaintiff sees that that state court case isn't

16   going along and then sees as a state -- as a federal

17   plaintiff, this is what (indiscernible) defendant cited

18   teaches, and that is 650 -- my apologies.  That is 76

19   F.App. 790.

20           Again, the interests are not about who's the

21   party in a state court action and this is a federal

22   action; it's why is that case being initiated in federal

23   court.  ExxonMobil initiated this case in federal court

24   by removal to assert federal claims for the First

25   Amendment, federal (indiscernible) -- to have the

1    federal court make determinations on those on this

2    case -- make a determination on this -- on these -- on

3    these claims for relief to enjoin state case -- claims

4    (indiscernible) violations.

5              THE COURT:  Okay.

6              MS. SESTITO:  May I respond?

7              THE COURT:  Yes.  So let me be really clear.

8    ExxonMobil did not initiate a case.  ExxonMobil removed

9    a case that was filed that was removable under ordinary

10   diversity principles.  And I think that counsel's

11   argument makes clear that this isn't about comity at all

12   with them.  This is about forum shopping.  They want to

13   be in the state court.

14             And with due respect, we didn't create the

15   comity problem.  They created the comity problem by

16   filing a complaint that was removable.  We exercised our

17   right to remove it, a right that's given to us by

18   Congress.  And we're not trying to evade anything.  We

19   haven't filed any motions.  We're not seeking to do

20   anything.  This isn't a circumstance where -- there are

21   cases in the *Colorado River* where a plaintiff waited for

22   years, doesn't get a good outcome, and then assert a

23   different proceeding in a different court on a single

24   facts, because they're -- and that's a clear case of

25   forum shopping.  That's not what happened here.  We just

1    removed the case.  The cases are at their beginning.

2            And so to pretend that this is about comity, I

3    think it's clear they don't want the case stayed.  They

4    want to go back and they want to litigate in state

5    court.  They do have to state claims, because they

6    brought a private nuisance claim where they seek damages

7    that are distinct from the claims that the state has

8    brought forward.  And I also want to highlight that

9    these cases -- if the Court isn't persuaded about the

10   state-court-defendant/federal-court-plaintiff

11   distinction in all of the cases, the parties are the

12   same, or they are so intertwined as to be essentially

13   the same entities.  And that is something that the

14   nonprofit plaintiffs argue that they have that kind of

15   relationship with the state.

16           I'm frankly not sure the state would agree

17   with that.  Because the examples in the cases, like

18   under *Herrera*, it's a husband, wife, and their children.

19   They are closely related.  Or it's a husband and wife

20   that own a company together, a small company.  And the

21   state court action against the husband and the company.

22   And the federal court action is the wife, the husband,

23   and the company.  And in those cases, the court finds

24   that -- the court has found in *Herrera*, Ninth Circuit

25   case, that both parties are intertwined enough that

1  their interests are the same.

2        I don't believe, though, that -- that the same

3  can be said for nonprofits, that they have the same kind

4  of relationship as the owner of a corporation or a

5  corporation that they own or family members.  But their

6  interests are so closely aligned that they're

7  essentially the same party.  And so this is frankly just

8  an ordinary case.

9        Large companies get sued all the time on

10  claims that are similar.  It's extremely common to

11  have -- in cases where there's lots and lots of actions,

12  to have a federal MDL pending at the same time as a

13  state-coordinated proceeding in California.  It happens

14  every day.  And that's really all that this is.

15        These are two separate lawsuits that were

16  filed by separate parties.  I -- I don't believe they

17  can meet this test of being intertwined.  And I would

18  ask the court to look at *Herrera* that describes those

19  kinds of relationships, or two related corporations.

20        I don't believe that Sierra Club and the

21  Attorney General are family members.  I don't believe

22  they commonly own a corporation.  I don't believe that

23  they're related corporations.  And presumably, they

24  filed separate lawsuits precisely because they have

25  separate interests.  And so this is just an ordinary

1    removal that should proceed in state court pursuant to

2    this court's obligation to hear the case.

3            THE COURT:  So just to bring it finally to its

4    conclusion, I know you wouldn't, you know, agree with me

5    if my decision is that the State of California case goes

6    back to state court.  But were that to occur, your

7    position is, okay, we'll just roll ahead in the two

8    forums.

9            MS. SESTITO:  Absolutely.  Happens every day,

10    all the time.  Yep.

11            THE COURT:  Okay.

12            MS. PARK:  The nonprofits are asserting claim

13    which are, if not private general attorney actions, like

14    a private attorney general action, and would alongside

15    the attorney general.  And --

16            THE COURT:  You would agree that you're not --

17    you're not -- as a going forward matter, you're so tied

18    to the attorney -- there are times when you're adverse

19    to the attorney general, I presume.

20            MS. PARK:  I don't think we've progressed far

21    enough to know.

22            THE COURT:  Well, there will be a day where

23    perhaps you will, but okay.

24            But counsel suggests -- and I'll go back and

25    look at it -- but the -- the nature of the inner

1    relationship has to be different than two parties that

2    happen to have one moment in time in alignment with

3    respect to certain claims going forward, that that's not

4    enough.

5         MS. PARK:  Uh-huh.  But the -- the

6    California -- the California's Attorney General Office

7    is suing on behalf of the State of California.

8         THE COURT:  Right.

9         MS. PARK:  And there is nonprofits that can be

10   found in paragraphs 20, 211, 212, and 337 of the

11   complaint.  So fundamentally, the fundamentally real

12   parties of interest in both actions are the People of

13   the State of California.  And they're asserting the same

14   claims for the same underlying conduct.  I can't see how

15   they're not intertwined in this instance.

16        THE COURT:  Okay.  I want to go back and look

17   at some things.  I may -- I may or may not ask for some

18   additional input from the parties, but I'll go back and

19   take a look and give you a --

20        MS. SESTITO:  Now, if you want very quick

21   point on that one housekeeping issue.  So first, just on

22   that last point, the -- the state attorney general files

23   lawsuits all the time.  And it can't be that the subject

24   matter of any suit brought by the state attorney general

25   any other case that raises similar claims or similar

1   issues on behalf of private plaintiffs, the People in

2   the State of California can't proceed in federal court

3   just because the state attorney general has chosen to

4   sue in state court on a similar topic.  But that can't

5   be the rule because the -- the federal courts would be

6   very, very empty if that was the case.

7          The housekeeping issue, Your Honor, the -- the

8   state's attorneys and I had a conversation yesterday to

9   talk about kind of the next step forward in the case,

10  which I very much appreciate them initiating.  And if --

11  if -- however the case proceeds, we want to have an

12  opportunity to meet and confer.  And so if the cases --

13  if the motions to remand are denied, then, of course,

14  the cases will stay here.  We will meet and confer about

15  next steps.

16          If -- if Your Honor, I hope you will choose to

17  deny the motions to remand.  But if -- if you grant

18  them, one or both, we would ask for a short

19  administrative stay to allow the plaintiffs to meet and

20  confer about next steps, to allow ExxonMobil the ability

21  to evaluate potential appellate options and potentially

22  seek a -- a more formal stay.

23          And that's something that the state has agreed

24  makes sense to -- through just their remand, not the

25  order itself, but the actual physical remand of the file

 1    to state court -- for a 30-day period to allow the

 2    parties to meet and confer about the next steps in the

 3    case.  And I -- I submit -- I haven't had a chance to

 4    talk to counsel for the nonprofits, but I would submit

 5    that it would make sense as well in that circumstance.

 6              THE COURT:  So if my decision was that I want

 7    to remand one or both, I -- you -- I -- you have not

 8    confronted this to say, "All right, I'm going to remand

 9    but it's not -- the remand isn't going to be triggered

10    for some period of time"?

11              MS. SESTITO:  That's right.  So if the

12    administrative stay of just the remand --

13              THE COURT:  Do you have some revise for me

14    procedurally where that would have occurred?

15              MS. SESTITO:  Yes.  I mean, it has occurred

16    before in this court in other litigation before.  Judge

17    Chhabria had stayed a remand.

18              THE COURT:  That's --

19              MS. SESTITO:  And -- and it's just staying the

20    actual mailing of the file to --

21              THE COURT:  I understand.

22              MS. SESTITO:  -- state court so that the

23    parties have an opportunity to either -- both of these

24    issues are appealable, and so we want to review those

25    options and then confer with --

1          THE COURT:  Understand.  Okay.  And you

2   haven't had an opportunity --

3          MS. PARK:  I have not had an opportunity to

4   look into this.

5          THE COURT:  Okay.  Okay.  Thank you.

6          MS. PARK:  Thank you.

7          MS. SESTITO:  Thank you, Your Honor.

8          (Proceeding concludes at 3:22 p.m.)

9                      *********

10                 C E R T I F I C A T E

11      I certify that the foregoing is a correct

12   transcript from the record of proceedings in the

13   above-entitled matter.

14

15

16   _____        02/27/2025

17   Teresa B. Johnson, CVR-M-CM, RVR, RVR-M        Date

18

19

20

21

22

23

24

25